ANTHONY CONTE *v.* DWAN LINCOLN-MERCURY, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued October 14—decision released December 21, 1976

*George W. Billings III,* for the appellant (named defendant).

*Edward M. Sheehy,* for the appellant (defendant Ford Motor Company).

*Allan S. Mall* and *Michael R. Friedman,* for the appellee (plaintiff).

BARBER, J. The plaintiff brought this action against Dwan Lincoln-Mercury, Inc., hereinafter referred to as Dwan, and Ford Motor Company, hereinafter referred to as Ford. The complaint, in one count against both defendants, alleges the sale of a Lincoln Continental automobile and sets forth claims of breach of warranty and revocation of acceptance. The defendants Dwan and Ford each filed an answer denying the allegations of breach of warranty and revocation of acceptance, and a special defense claiming that the plaintiff could not properly maintain the action and recover damages because of the limitations set forth in the basic written warranty. In addition, Dwan filed a counterclaim seeking damages for storage of the automobile after its return.

The case was tried to a jury of six. At the conclusion of the evidence, the defendant Dwan moved for a directed verdict as to the claim for revocation of acceptance on the grounds that such revocation was not timely, that there was no evidence of nonconformity substantially impairing the automobile's value, and that Dwan had made all repairs and performed its obligation as required by the warranty. The defendant Ford moved for a directed verdict on the plaintiff's claim for revocation of acceptance on the grounds that there was no evidence that the plaintiff, as buyer, bought the automobile from Ford or that Dwan was the agent of Ford insofar as the sale of the automobile was concerned, that there was no evidence that the auto-

mobile purchased from Dwan had a nonconformity which substantially impaired its value, and that there was no evidence that the plaintiff ever gave notice to the defendant of his revocation of acceptance. Both defendants also argued for a directed verdict on the breach of warranty claim asserting that no evidence was introduced by the plaintiff that the automobile which he purchased from Dwan was worth substantially less than the value for which the plaintiff had contracted.

The court granted those motions, in effect, only as to the plaintiff's claim of breach of warranty because of lack of evidence on damages, and submitted the plaintiff's claim on revocation of acceptance to the jury. The court also directed a verdict for the plaintiff on the defendant Dwan's counterclaim. The jury returned a verdict for the plaintiff to recover of both defendants, "on rescission," the purchase price of the automobile with interest, and returned a directed verdict for the plaintiff on the counterclaim. Motions were filed to set aside the verdicts, and Ford moved for judgment notwithstanding the verdict against it, which the court denied. Both defendants have appealed. Dwan claims that the verdict against it is against the evidence because there was no evidence that the value of the automobile was substantially impaired or that the plaintiff attempted to revoke within a reasonable time. Dwan also claims that the court erred in its instructions to the jury on the issue of revocation of acceptance, and that the court committed error in directing a verdict for the plaintiff on the counterclaim. Ford claims that the verdict against it is against the evidence on the ground that there is no evidence that Dwan was the agent of Ford in connection with the sale of the automobile and no

evidence that the automobile was substantially impaired or that the plaintiff gave notice to Ford of his revocation of acceptance. Ford also claims that the court erred in its instructions to the jury on the issues of revocation of acceptance, agency and certain statements made by a witness, as well as in admitting into evidence certain letters from Ford to the plaintiff.

When a verdict is attacked on the ground that it is against the evidence, the question on appeal is whether on the basis of the evidence introduced and viewing that evidence in a light most favorable to the plaintiff, a jury could have reasonably found a defendant or defendants liable. *Duley* v. *Plourde,* 170 Conn. 482, 485–86, 365 A.2d 1148; *Merhi* v. *Becker,* 164 Conn. 516, 520, 325 A.2d 270. There was evidence from which the jury could reasonably have found the following facts: On or about March 25, 1970, the plaintiff entered into and signed an agreement with Dwan to purchase a 1970 Lincoln Continental automobile, which had been manufactured by Ford, and paid Dwan the total purchase price for the automobile. The following day, after being notified that the automobile was ready for delivery, the plaintiff went to pick up the automobile from Dwan but refused to do so because it was dirty and a door was out of alignment. The following day the plaintiff took the automobile, a warranty booklet, and other printed matter which was inside the vehicle. In 1970, the defendant Dwan was an authorized Lincoln Continental dealer under a written sales and service franchise agreement with the defendant Ford to sell and service automobiles. This agreement states that Dwan is not the agent of Ford. The purchase order signed by the plaintiff also recites that it is understood by the buyer

that "there is no relationship of principal and agent between the dealer [Dwan] and the manufacturer [Ford]." The back of the purchase order agreement contained a stipulation, which the plaintiff acknowledged he had read as part of the agreement, that there are no warranties applicable to the automobile, except the most recent printed Ford Motor Company warranty or warranties, "and they shall be expressly in lieu of any other express or implied warranty, condition or guarantee on the new vehicle, chassis or any part thereof, including any implied warranty of merchantability or fitness and of any other obligation on the part of Ford Motor Company or the Selling Dealer." The basic Ford warranty provides that with respect to each 1970 passenger automobile built by Ford the dealer will repair or replace any part, except tires and tubes, that is found to be defective in factory materials or workmanship in normal use within twelve months from the date of original retail delivery or original use by Ford or any of its dealers, whichever is earlier. The day after the plaintiff took delivery of the automobile he noticed that the motor and transmission were leaking oil and that the cigarette lighter and windshield wiper did not work. The next morning the automobile was brought in to Dwan, the windshield wiper was fixed and the plaintiff was told that he should make a list of his problems and Dwan would take care of them. Within a week, the electric windows did not operate and paint blistered on the vehicle. Between the time that the plaintiff took delivery in March, 1970, until May 3, 1971, Dwan had attempted to repair the automobile eight times as shown by Dwan's records. Between October 25, 1970, and May, 1971, the automobile became undriveable five times on the road

and was towed to Dwan for repairs. At one time when the car was driven, the plaintiff received an electrical shock. Subsequently, an alternator was replaced and a fan belt repaired. Soon after the plaintiff purchased the automobile and until May, 1971, the plaintiff corresponded directly with Ford relating his problem with respect to the vehicle. On October 27, 1970, the plaintiff met with a representative of Ford and was assured, in the presence of Dwan's service manager, that his automobile would be repaired to the plaintiff's satisfaction. The last repair order for the automobile was May 3, 1971, when, two weeks after an alternator was replaced, the automobile had to be towed and a fan belt repaired. Upon being informed that the automobile had been repaired, the plaintiff told Dwan to keep it because the vehicle was dangerous and he wanted his money back or another automobile. After that, the plaintiff never picked up his vehicle. In May, 1971, after the automobile had been in the garage six to eight weeks in one year of ownership, after being told each time that the automobile was in good working order, after Ford sent its representative to ascertain the problem and have the vehicle put in good working condition, and after the automobile had been towed to the garage five times, the plaintiff refused, in May, 1971, to accept any further assurance from Dwan and Ford that the automobile was in good and safe order and refused to take delivery of the vehicle after the last purported repairs.

## I

The defendant Dwan states the basic issue on its appeal to be "[w]hether the plaintiff as a purchaser of an automobile is entitled to rescind or revoke acceptance of the contract of sale of such automo-

bile and thereby recover the purchase price from the defendant Dwan Lincoln-Mercury, Inc., when there is no evidence that the value of the automobile was substantially impaired." Although Dwan claims error in the instructions to the jury, it has not complied with the provision of the Practice Book which provides that when error is claimed in the charge to the jury, the brief of the appellant shall include not only a verbatim statement of all relevant portions of the charge but also all relevant exceptions to the charge. Practice Book § 631A (c) (2). Under the circumstances, we assume that the instructions were correct. See *State* v. *Grayton,* 163 Conn. 104, 114, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495.

The Uniform Commercial Code–Sales is the law of this state.[1] Before its enactment, breach of warranty and rescission were considered alternate remedies. *Vitale* v. *Gargiulo,* 144 Conn. 359, 364, 131 A.2d 830. The code is much more comprehensive and explicit. See White & Summers, Uniform Commercial Code § 8-1. It generally avoids the use of the ambiguous term "rescission"; White & Summers, op. cit.; 67 Am. Jur. 2d, Sales, § 215; and provides a specific remedy permitting a buyer under proper conditions to force the seller to retake nonconforming goods even if the buyer has already accepted them.[2] 3 Williston, Sales (4th Ed.) § 25-6 (2). Under the code, a buyer's revocation of acceptance is a distinct course of action not to be

---

[1] General Statutes §§ 42a-2-101 to 42a-2-725, inclusive.

[2] "[General Statutes] Sec. 42a-2-608. REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART. (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of

confused with rescission by mutual consent; see Uniform Commercial Code § 2-209, comment 3; nor is it an alternative remedy for breach of warranty. See Uniform Commercial Code § 2-608, comment 1. When a buyer justifiably revokes acceptance, he may cancel and recover so much of the purchase price as has been paid. General Statutes § 42a-2-711. On the other hand, the basic measure of damages for breach of warranty is the difference between the value of the goods accepted and the value that they would have had if they had been as warranted. § 42a-2-714.

Section 42a-2-608 of the General Statutes sets up the following conditions for the buyer who seeks to justify revocation of acceptance: (1) a nonconformity which substantially impairs the value to the buyer; (2) acceptance (a) with discovery of the defect, if the acceptance is on the reasonable assumption that the nonconformity will be cured, or (b) without discovery of the defect, when the acceptance is reasonably induced by the difficulty of the discovery or the seller's assurances; (3) revocation within a reasonable time after a nonconformity was discovered or should have been discovered; and (4) revocation before a substantive change occurs in the condition of the goods not caused by their own defects. The buyer has the burden of establishing any breach with respect to the goods accepted. § 42a-2-607 (4). "Revocation of acceptance is possible only where the nonconformity sub-

discovery before acceptance or by the seller's assurances. (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it. (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

stantially impairs the value of the goods to the buyer. For this purpose the test is not what the seller had reason to know at the time of contracting; the question is whether the non-conformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances." Uniform Commercial Code § 2-608, comment 2.

Whether goods are substantially impaired by non-conformity and whether revocation of acceptance is given within a reasonable time are questions of fact subject to the jury's determination. *Tiger Motor Co.* v. *McMurtry,* 284 Ala. 283, 224 So. 2d 638; *Frontier Mobile Homes Sales, Inc.* v. *Trigleth,* 256 Ark. 101, 505 S.W.2d 516. The reason why a "substantial impairment of value" must exist before a buyer may justifiably revoke his acceptance is to preclude revocation for trivial defects or defects which may easily be corrected. See *Rozmus* v. *Thompson's Lincoln-Mercury Co.,* 209 Pa. Super. 120, 224 A.2d 782. Each case must be examined on its own merits to determine what is a "substantial impairment of value" to the particular buyer. *Tiger Motor Co.* v. *McMurtry,* supra, 291. The facts of *Tiger,* similar to those stated here, disclose a situation where, after the plaintiff had bought and accepted an automobile, it consumed an excessive amount of oil, provided low gas mileage, and continued to jump or misfire, even after the installation of new equipment such as a new fuel pump, a new carburetor, new piston rings, and a "short block." The court held that the evidence supported the conclusion of the trier of fact that there had been a substantial impairment of value to the complainant buyer and that the buyer was justified in

revoking his acceptance a year after the sale. Similarly, the jury in the present case could reasonably have concluded from the evidence before it that the nonconformity of the automobile purchased by the plaintiff substantially impaired its value to the plaintiff and that he was entitled to a return of the purchase price from Dwan.

Not only must there be a substantial impairment of value to the buyer, but the revocation must take place "within a reasonable time after the buyer discovers or should have discovered" the defect. General Statutes § 42a-2-608 (2). "What is a reasonable time for taking any action [under the code] depends upon the nature, purpose and circumstances of such action." § 42a-1-204 (2). Although the plaintiff did not revoke his acceptance until fourteen months after the sale, it is significant that he was in almost constant touch with the dealer concerning the condition of the vehicle, relying on the dealer's continued assurances that the automobile would be repaired satisfactorily. When it became apparent to the buyer that repeated attempts at adjustment had failed, he unequivocally notified Dwan that he was revoking his acceptance. Under the circumstances of this case, involving an almost continuous series of negotiations and repairs, the delay in the notice did not prejudice the dealer and the delay was not unreasonable. See *Tiger Motor Co.* v. *McMurtry,* supra; *Gramling* v. *Baltz,* 253 Ark. 361, 485 S.W.2d 183; *Irrigation Motor & Pump Co.* v. *Belcher,* 29 Colo. App. 343, 483 P.2d 980; White & Summers, Uniform Commercial Code § 8-3. Under the Uniform Commercial Code, the dealer did have the right to attempt to cure any defects in the automobile; § 42a-2-508; but this opportunity does not last for an indefinite period of time. See *Tiger Motor*

*Co.* v. *McMurtry,* supra; 3 Williston, Sales (4th Ed.) § 25-6 (3). "One policy of the Code is to encourage the parties to work out their differences and so to minimize losses resulting from defective performance." White & Summers, op. cit. § 8-2 n.15. Continued use of the automobile was inevitable while there was an attempt to cure the defects as they became apparent and such use did not defeat the revocation in this case. The jury could have reasonably concluded that the revocation was timely and justifiable. The plaintiff was, therefore, entitled to recover the amount of the purchase price which he had already paid. § 42a-2-711. This basic remedy for justifiable revocation was not effectively limited by the warranty provision that the buyer was only entitled to the repair and replacement of defective parts. The code provides that it shall be liberally construed; § 42a-1-102; and recognizes that it is the very essence of a sales contract that at least minimum adequate remedies be available. § 42a-2-719; Uniform Commercial Code § 2-719, comment 1. In this case, the limited remedy of the warranty had failed of its essential purpose because even after numerous attempts to repair, the automobile still did not operate as a new automobile should, free from defects. See *Riley* v. *Ford Motor Co.,* 442 F.2d 670 (5th Cir.). The code provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." § 42a-2-719 (2).

The court did not err in directing the verdict on the counterclaim of the defendant Dwan. Dwan did not customarily store automobiles, had never told the plaintiff that he would be charged for storage, and had never billed the plaintiff for storage. There

was insufficient evidence of a good faith claim for storage charges to send this issue to the jury. The motion for directed verdict was properly granted. *Senderoff* v. *Housatonic Public Service Co.,* 147 Conn. 18, 22, 156 A.2d 517.

There is no error on the appeal of the defendant Dwan.

## II

The defendant Ford states the basic issue on its appeal to be "[w]hether the plaintiff, a purchaser of an automobile, can rescind or revoke acceptance of the automobile and recover the purchase price as to the defendant Ford Motor Company, the manufacturer of the automobile, when there was no evidence that Ford either sold or contracted to sell the automobile to the plaintiff." A "seller" is defined as a person who sells or contracts to sell goods. § 42a-2-103 (1) (d). The plaintiff contends that, in making the sale of the automobile to the plaintiff, Dwan was acting as the agent of Ford. This contention and the trial court's instructions on agency confuse the plaintiff's claim for revocation of acceptance with the plaintiff's claim for breach of warranty, which was not submitted to the jury. "[N]ormally dealers in new automobiles, although commonly spoken of as agents, are purchasers from the manufacturers, their only attribute as agents being authority to extend to the purchasers from them the limited warranty of the manufacturers." Restatement (Second), 1 Agency § 14J, comment e; 1 Williston, Sales (4th Ed.) § 2-1.

The existence of an agency relationship is generally one of fact. *Cleaveland* v. *Gabriel,* 149 Conn. 388, 394, 180 A.2d 749; see *Nowak* v. *Capitol Motors, Inc.,* 158 Conn. 65, 68, 255 A.2d 845. The simple

issue raised in this case is whether there was any evidence from which the jury could reasonably have concluded that Dwan was acting as the apparent agent of Ford in the actual sale of the automobile to the plaintiff. Despite the written limitation of any agency relationship in the sale of the automobile, which was communicated to the plaintiff, the plaintiff argues that by acts of Ford, Dwan became the apparent agent of Ford. It is an acknowledged principle of agency law that a principal may limit the powers of his agent and that all parties who deal with the agent with knowledge of the limitation are bound by its terms. *Fischer Co.* v. *Morrison*, 137 Conn. 399, 402, 78 A.2d 242; 3 Am. Jur. 2d, Agency, § 77. Upon a careful review of the facts in this case, we are convinced that there was no evidence to support a conclusion that Dwan was the agent of Ford in the actual sale of the automobile. *General Motors Corporation* v. *Earnest*, 279 Ala. 299, 184 So. 2d 811. The statute allows revocation only against the person who sells or contracts to sell goods. Dwan was not the agent of Ford insofar as the sale of the automobile was concerned. To be entitled to the remedy of revocation, there must be a buyer-seller relationship, and that relationship was absent in this case. Ford's contractual relationship was with Dwan. See *Voytovich* v. *Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir.), holding that a buyer of a substantially nonconforming motorboat could directly sue the manufacturer for breach of warranty but that only the dealer-seller could be sued for revocation. Accordingly, the trial court should have granted the defendant's motion for a directed verdict or, pursuant to § 255 of the Practice Book, granted the motion for judgment notwithstanding the verdict.

This conclusion is dispositive of Ford's appeal, and it is therefore unnecessary to consider the other claims of error pursued by Ford in its brief.

There is error on the appeal of the defendant Ford, the judgment as to this defendant only is set aside and the case is remanded with direction to render judgment in favor of the defendant Ford Motor Company.

In this opinion the other judges concurred.