415 So.2d 1024 (1982)
ROYAL LINCOLN-MERCURY SALES, INC., et al
v.
Melvin WALLACE.
No. 53084.
Supreme Court of Mississippi.
May 5, 1982.
Rehearing Denied July 14, 1982.
*1025 Watkins & Eager, Robert H. Pedersen, Hassell H. Whitworth, Jackson, for appellants.
Graves, Terry & Sheely, Jerry O. Terry, Gulfport, for appellee.
Before PATTERSON, C.J., and ROY NOBLE LEE and HAWKINS, JJ.
PATTERSON, Chief Justice, for the Court:
Melvin Wallace, the purchaser of a new Continental automobile, brought suit against Royal Lincoln-Mercury Sales, Inc., (Royal) and Ford Motor Company (Ford) for breach of an implied warranty of fitness and for breach of an express warranty of fitness by Ford. Additionally, there was charged a violation by both Royal and Ford of 15 U.S.C. § 2301 et seq. From a jury verdict of $13,812.50 for damages and a court award of $2,162.50 for attorneys fees in favor of the plaintiff, both Royal and Ford appeal.
Although there are numerous assignments of error for reversal by both defendants they were reduced to the following on oral argument:
1. Does the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., apply to this case?
2. Does the implied warranty of fitness, Miss. Code Ann. § 75-2-315 have present application?
3. Did the plaintiff effectively revoke acceptance of the vehicle as to both Royal and Ford?
4. Can Wallace recover the purchase price of the automobile from Ford?
On July 7, 1978, Melvin Wallace, appellee, purchased a new 1978 Lincoln Continental automobile from Royal Lincoln-Mercury Sales, Inc., of Gulfport for $13,812.00. Royal delivered a manufacturer's new car limited warranty from Ford to Wallace along with the car. Afterwards, there began an unusual series of events leading to this suit.
The first of numerous troubles occurred approximately two weeks after the automobile's purchase when the engine hesitated, the chrome rattled and the vinyl roof peeled. The car was driven to Royal for repair and after four days was returned to Wallace and according to him, the engine still hesitated and the chrome still rattled.
Thereafter Wallace and his wife made a trip from Gulfport to Nashville, Tennessee, and while near Mobile, Alabama, the car's air conditioning failed and although it was repaired by a Lincoln dealer in Nashville, it again failed on the return trip to Gulfport. Moreover, the car used approximately three quarts of oil during the trip.
The car was again taken to Royal for repairs. The complaints were the problems with the air conditioning, loose chrome, arm rests not being sewn, paint fading, oil leakage, and a wire protruding through the upholstery on one of the seats. Later, after being assured the problems had been corrected, *1026 the car was returned to Wallace who discovered it still leaked oil and that the air conditioning had failed again. Royal then replaced the compressor in the air conditioner.
When the car was four months old with approximately 2,200 miles on it, Mr. Loovis, a Ford factory representative, came from New Orleans, to Royal in Gulfport to assess the problems Wallace was experiencing with his automobile. At this time Wallace, his wife, Loovis, a service manager at Royal, and Mr. Fargason, the President of Royal inspected the car. Wallace advised them the oil was still leaking and that the valve cover gasket installed by Royal had not stopped the leakage. He reported the vinyl top continued to peel and that the glue previously applied by Royal had not corrected the problem. After the inspection the parties gathered in Fargason's office to discuss the difficulties with the car.
Loovis, the factory representative, offered to install a short block in the engine, repair the vinyl roof, and the loose chrome as well as repaint where needed. Wallace refused stating that he wanted everything replaced, a new car, or his money returned, adding that he did not want a repaired automobile. Fargason refused to return Wallace's money because he thought the car could be repaired. Wallace then offered his car plus $500 for a new one but this offer was declined. Wallace next offered to trade "sticker price" for "sticker price" for a new car but this suggestion was also refused. Wallace then advised he would have to contact an attorney whereupon Fargason replied that he would see him in court.
Wallace retained possession of the car and when the starter failed in September 1978, he had it towed to Royal at his own expense for repair. Fargason again offered to install the short block but Wallace refused permitting only the repair to the starter. Thereafter Wallace moved to Bowling Green, Kentucky, where difficulties with the automobile continued. Mainly, the leakage of oil and the air conditioner again malfunctioning. Wallace later moved to Florida where the car was taken to a Lincoln dealer in Fort Walton Beach who advised him to take the car back to Royal. He did so and according to Wallace, Fargason refused to trade or make satisfaction on the car.
On March 15, 1979, the car was again taken to the Lincoln dealer in Fort Walton Beach who was informed of all the previous problems he had with the car and additionally, that the electrical system was failing. These complaints led to the installation of a new valve cover gasket in the engine, the dealer ordered a new vinyl top and gained authority to repaint the entire car and install new rocker panel moldings. At this time the car had approximately 11,000 miles on it. After the parts arrived at the dealership in Florida, Wallace was unavailable so the repairs could not be made. During the interim Wallace had returned to Mississippi, parked the car permanently, and filed suit against Royal and Ford asking the court to make a determination as to the proper disposition of the car.
Without contradiction, all of the warranty repair work performed on the automobile was done at no charge to Wallace and all work offered to be done would not have cost him anything.

I. DOES THE MAGNUSON-MOSS WARRANTY ACT APPLY IN THIS CASE?
Ford and Royal agree that under the facts and in the context of the issues on appeal, the right of action created by the Magnuson-Moss Warranty Act for breach of implied and express warranties is co-extensive with the right of action created by Mississippi Uniform Commercial Code. They further agree that though the act does not create any new implied warranties, but merely incorporates and enforces existing state implied warranty law, the act nevertheless, creates a new federal cause of action for the breach of warranties. Thus an alleged breach of an implied warranty or of an express written warranty can be the basis of two separate and distinct claims. A claim can be asserted that a breach of *1027 warranty violated the applicable sections of the state's Uniform Commercial Code or a claim can be made that the same breach gives rise to a cause of action under the federal act. The elements of proof are the same whether the claim is made under the act or under state law. The issue now in contention under the Magnuson-Moss Warranty Act is the award of attorneys fees which is authorized by the act under certain conditions but which is not authorized by the Uniform Commercial Code.
The condition precedent to the award of attorneys fees is that provided in 15 U.S.C. § 2310(e):
No action ... may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty... unless the person obligated under the warranty... is afforded a reasonable opportunity to cure such failure to comply.
The relevant issue, reasonable opportunity to cure, was factual and in our opinion was properly left for the jury's determination under correct instructions. The issue was resolved in plaintiff's favor by the jury as is evidenced by its verdict. Thereafter, upon proper motion, the court awarded attorneys fees. We are of the opinion the Magnuson-Moss Warranty Act did have application and that the issue presented under it was properly resolved.

II. DOES THE IMPLIED WARRANTY OF FITNESS, MISS. CODE ANN., § 75-2-314 HAVE APPLICATION?
Miss. Code Ann. § 75-2-315 in pertinent part provides:
Implied Warranty; fitness for particular purpose.
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty that the goods shall be fit for such purpose... .
There is no testimony that the plaintiff relied upon the seller's skill or judgment in selecting the car that he purchased from Royal. Obviously, the purpose of the purchase from the authorized dealer was that of transportation. Although it can be envisioned that an automobile could be purchased for a particular purpose such as racing, towing a large trailer, or other specialized use, where the ordinary purchaser would need the seller's skill or judgment in making a selection, this was not so in the present case. We, therefore, think that § 75-2-315 has no application. See Massey-Ferguson, Inc. v. Evans, 406 So.2d 15 (Miss. 1981) and Ford Motor Company v. Fairley, 398 So.2d 216 (Miss. 1981).
The above determination is not to be considered as foreclosing the question of liability of either Ford or Royal under a preceding section. Miss. Code Ann. § 75-2-314 (Repl. 1981) provides in part as follows:
(1) A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section, the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
(2) Goods to be merchantable must be at least such as ...
(c) are fit for the ordinary purposes for which such goods are used; and ...
We are of the opinion that § 75-2-314 does have application to Royal, the seller, because an issue of fact was made by the pleadings and evidence for the jury's resolution as to whether the Continental automobile was fit for the ordinary purpose for which it was purchased. Massey-Ferguson, supra. Such issue was presented to the jury under proper instruction and was resolved in Wallace's favor. We think, therefore, that there was no error in this finding by the jury as to Royal.
A greater question arises concerning the liability of Ford under § 75-2-314. Ford contends that Wallace cannot recover the purchase price from it because Ford did not sell the vehicle to him, relying upon Miss. Code Ann. § 75-2-103(1)(d), wherein a seller is defined as, "a person who sells or contracts to sell goods." From this premise Ford argues there is no evidence in the *1028 record that it either sold or contracted to sell anything to Wallace and therefore, the remedies provided in Miss. Code Ann. § 75-2-711 do not apply to it. Ford cites Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976), where one of the issues was, "whether the plaintiff, a purchaser of an automobile, can rescind or revoke acceptance of the automobile and recover the purchase price as to the defendant Ford Motor Company, the manufacturer of the automobile, when there was no evidence that Ford either sold or contracted to sell the automobile to the plaintiff." The Connecticut Court ruled:
The statute allows revocation only against the person who sells or contracts to sell goods. Dwan was not the agent of Ford insofar as the sale of the automobile was concerned. To be entitled to the remedy of revocation, there must be a buyer-seller relationship, and that relationship was absent in this case. Ford's contractual relationship was with Dwan. Id. at 125, 374 A.2d at 150.
See also Clark v. Ford Motor Co., 46 Or. App. 521, 612 P.2d 316 (1980), to the same effect.
We conclude, in the absence of any evidence that Ford either sold or contracted to sell the vehicle to the plaintiff, that no remedy of revocation was available to the plaintiff under the terms of § 75-2-314 against Ford as a "seller." Again this does not mean that the plaintiff is precluded from recovering against Ford.
We are of the opinion that Ford's liability to the buyer, if there was liability, emanates from its express warranty to Wallace, which was delivered to him by Royal for Ford at the time of the purchase. It then became a vital part of and merged into the purchase agreement. This warranty assures the purchaser that "the selling dealer will repair, replace or adjust free any parts, except tires, found to be defective in factory materials or workmanship within the earlier of 12 months or 12,000 miles from either first use or retail delivery." By this warranty Ford expressly designated Royal, the dealer, to be their agent to repair, replace or adjust any parts, except tires, found to be defective to the end result that the vehicle purchased would conform to the seller's implied warranty of merchantability.
Obviously, we think, this raises the question of whether the warranty had failed in its essential purpose of providing the purchaser with an automobile reasonably suitable for its intended use. Such repair and replacement warranty provides confidence and assurance to the buyer that he will secure goods conforming to the contract, and a limitation of liability to the seller. If it fails, however, as a remedy in its essential purpose, then its function as a limitation of liability also fails. Durfee v. Rod Baxter Imports, Inc., 262 N.W.2d 349 (Minn. 1978), and see Riley v. Ford Motor Company, 442 F.2d 670 (5th Cir.1971).
The issue of whether the services of Royal, Ford's agent for replacement and repairs, brought the automobile into conformity with the seller's warranty of merchantability, was presented to the jury under proper instruction and was resolved adversely to Ford.
We, therefore, are of the opinion that liability was extended to Ford through its expressed warranty of merchantability, the same as it extended to Royal, the seller, through § 75-2-314.

III. DID THE PLAINTIFF EFFECTIVELY REVOKE ACCEPTANCE OF THE VEHICLE AS TO BOTH ROYAL AND FORD?
A reference to the facts above related reveals an intention to revoke by Wallace when he stated to Fargason that he was dissatisfied with the car and offered to trade for a new one. When this effort failed, Wallace advised Fargason that he would contact his lawyer. Fargason replied that he would meet Wallace in court. Although the issue is clouded by subsequent use of the automobile and additional efforts to have the defects corrected, Wallace's prior intention of revocation was revitalized when he parked the automobile within the 12 month and 12,000 mile warranty period *1029 and filed suit. Again, the issue was factual and was resolved by the jury on conflicting evidence against both Ford and Royal. We think, therefore, that the plaintiff effectively revoked acceptance of the automobile.

IV. CAN WALLACE RECOVER THE PURCHASE PRICE OF THE AUTOMOBILE FROM FORD?
As we have previously stated, Ford is liable to Wallace through its warranty delivered at the time of the purchase, thus leaving the question of the extent of the liability. Section 75-2-719(2) of Miss. Code Ann. (Repl. 1981), provides, "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code." One of the remedies provided in the code is the return of the purchase price. See Miss. Code Ann. § 75-2-711(1) (Repl. 1981), as well as Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976); Lanners v. Whitney, 247 Or. 223, 428 P.2d 398 (1967); Jacobs v. Metro Chrysler-Plymouth, Inc., 125 Ga. App. 462, 188 S.E.2d 250 (1972); and Byrd v. Moore Ford Company, 116 Ga. App. 292, 157 S.E.2d 41 (1967). We conclude that Wallace was entitled to the recovery of the purchase price less the automobile's depreciation.
The issue was presented to the jury with an appropriate instruction and its verdict coincided with the purchase price. We observe that the defendants had every opportunity to diminish the purchase price by offering evidence of diminished value but did not do so. The burden is on the party relying on the matter in mitigation or reduction of damages to make proof of the facts which will operate to bring the mitigation into effect. Tennessee Valley Sand & Gravel Co. v. M/V Delta, 598 F.2d 930 (5th Cir.1979); Poteete v. City of Water Valley, 207 Miss. 173, 42 So.2d 112 (1949); and Mengel Co. v. Parker, 192 Miss. 634, 7 So.2d 521 (1942). There being no evidence before it by which the jury could have reduced the amount of the purchase price, we think that they correctly responded to the evidence before them.
We, therefore, affirm as to both damages and the award of attorneys fees.
AFFIRMED.
SUGG, P.J., WALKER, P.J., and BROOM, ROY NOBLE LEE, BOWLING, HAWKINS and DARDEN, JJ., concur.
DAN M. LEE, J., concurs in result only.