**NEWPORT OIL CORPORATION,**

v.

**VITI BROS., INC., et al.**

**No. 80-153-Appeal.**

Supreme Court of Rhode Island.

Jan. 11, 1983.

Reargument Denied Jan. 31, 1983.

Sheffield & Harvey, William R. Harvey, Newport, for plaintiff.

Moore, Virgadamo & Lynch, Ltd., Jeremiah C. Lynch, Jr., Newport, for defendants.

## OPINION

WEISBERGER, Justice.

This is an appeal from a judgment entered in the Superior Court following a nonjury trial. The judgment was rendered only against the corporate defendant. The trial justice determined that the plaintiff is entitled to the sum of $476.30 for fuel oil sold and delivered, $3,547.38 for unpaid rent under a lease agreement, and $15,635.43 for gasoline consigned to the defendant for sale in the operation of its service station. Both parties have appealed the judgment. We sustain the plaintiff's appeal in part and deny and dismiss the defendant's appeal. The facts as found by the trial justice are as follows.

In March 1976, Viti Brothers, Inc. (Viti) entered into a sublease with Newport Oil Corporation (Newport) for a service station that Newport had leased from a third party. The lease provided for a monthly rental of one and one-half cents for each gallon of gasoline sold, subject to a minimal monthly rental of $250 and a maximum rental of $400. From the commencement of the lease Newport provided gasoline to Viti,

which was sold to customers of the service station. Initially, from March 1976 until June 1976, Newport charged Viti for each load of gasoline delivered to the service station. Such payments were made on a weekly basis and were collected by Newport's operations manager, Maynard McLaughlin (McLaughlin). McLaughlin made a weekly call upon Theodore Viti, an officer of defendant corporation, at his automobile dealership and received payment from him.

In July 1976, the parties decided to change the method of billing Viti. Thereafter, it was agreed that gasoline would be sold by Newport to Viti on a consignment basis. Newport would deliver the gasoline to Viti's leased service station but would retain ownership of the gasoline until it was actually sold by Viti to its customers. Newport then billed Viti for the gallonage dispersed according to the meter on the pump. At about this same time, Theodore Viti and McLaughlin agreed that payments henceforth would be made by a Viti employee, Francis Quinn (Quinn), who was in charge of managing the operation of the service station. However, Theodore Viti cautioned McLaughlin to collect on a weekly basis from Quinn for the gasoline and "not to let him get too far ahead." In essence, the trial justice found that Theodore Viti had admonished McLaughlin not to extend credit to Quinn for more than one week's delivery of gasoline.

Practically from the beginning of this arrangement, accountant E.K. Williams, took over the financial supervision of the Viti business. Nevertheless, Quinn quickly fell behind in making his weekly payments for the gasoline so that by December 1976 the account balance for gasoline amounted to $15,635.43. Neither one of the individual Viti brothers nor Quinn was aware of the account deficit until Quinn received a call from Newport's general manager, Mr. William Couch (Couch) in December. By January Newport threatened to shut off supplies of gasoline to Quinn until he made payments. Thereupon, Quinn did make payments on the account and the gasoline deliveries were resumed. By April 1977 the account deficit had accumulated to a total of $29,075.25. At this juncture Couch called Theodore Viti and arranged to meet with him and his brother Nicholas. Couch then terminated any further deliveries and demanded full payment. Shortly thereafter, Viti vacated the premises, though its action was sufficiently equivocal that it took several weeks for representatives of Newport to determine if the lease had been abandoned or if it was still to continue.

Upon these facts the trial justice found that Viti owed $476.30 for fuel oil (a matter that is undisputed on appeal) and $3,547.38 for rent due and unpaid. The trial justice rejected defendants' argument that there had been a constructive eviction. He found that the obligation to pay rent was separate and distinct from the obligation to purchase gasoline and that the continuation of the lease was in no way dependent upon Viti's purchase of gasoline from Newport. We have examined the evidence relating to the foregoing findings and are of the opinion that the evidence abundantly supports the trial justice's determination in this respect and that defendant's arguments to the contrary are without merit.

The trial justice found that of the $26,-145.76 due and owing to Newport for deliveries of gasoline (after the application of a credit of $2,929.44), it was entitled to recover only the sum of $15,635.43 because of the credit limitation that had been placed by Viti upon Quinn. The defendant takes issue with this determination and contends that under the limitation of credit, Newport should be entitled to payment only for one week's delivery. However, Newport argues that it should be entitled to the entire payment for all amounts delivered to Viti.

There is no question that a principal may limit the authority of its agent. *Conte v. Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 125, 374 A.2d 144, 150 (1976); *Schenker v. Indemnity Insurance Co. of North America,* 340 Pa. 81, 85, 16 A.2d 304, 306 (1940). Nevertheless, it is equally true that a principal who retains the benefit of an agreement made by an agent, even

though unauthorized, may be held to have ratified or affirmed such agreement by implication. The general rule is set forth in Restatement (Second) *Agency* § 98 at 252 (1957).

> "The receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such receipt he repudiates the act."

Affirmance or ratification may be established by any conduct of the purported principal manifesting that he consents to be a party to the transaction or by conduct, justifiable only if there is ratification. Restatement (Second) *Agency* § 93 at 240. Rhode Island has recognized the doctrine of ratification where a principal has knowledge of the facts and accepts a benefit even when the act of the agent may have been unauthorized. *Kesselman v. Mid-States Freight Lines, Inc.*, 78 R.I. 518, 520, 82 A.2d 881, 882 (1951); *see Beckwith v. Rhode Island School of Design*, R.I., 404 A.2d 480 (1979).

In the case at bar, there is no question that Quinn was the authorized agent of Viti in the operation of its service station. He was clearly authorized to purchase gasoline from Newport on a consignment basis and to pay for such gasoline. The only limitation upon his authority was the admonition made by Theodore Viti to McLaughlin in respect to weekly payments.

Nevertheless, Viti's accountant, according to the evidence adduced at trial, received all financial records from Quinn. Such records included the amount of gasoline delivered on consignment and the status of Newport's account for gasoline received and sold. Viti is a corporation, and knowledge of its financial agent would constitute knowledge to Viti. The fact that Theodore and Nicholas Viti, who were principal officers of the corporation, did not communicate with their accountant or with Quinn would not absolve the corporation from the consequences of knowledge by the specific agent whose job it was to compile and preserve such financial data. It appears from the evidence that Viti received gasoline deliveries from Newport over a period of months through its agent. It further appears that Viti sold the gasoline so delivered and retained the proceeds of such sales. Moreover, Viti had knowledge of these transactions by virtue of the continuing records of its accountant. Consequently, we are of the opinion that there is no sound reason why Viti should not pay for the benefits that it received. Indeed, even in the absence of ratification, it would be inequitable for a principal who has received benefits from the act of a purported agent not to pay for the benefit conferred. Thus, such a principal may be held liable therefore under the equitable principles of restitution. Restatement (Second) *Agency,* § 104, comment d at 271.

In its brief, Viti raises a number of questions about the computation made by the trial justice under circumstances in which it is not possible for us to perceive his specific findings. Since the trial justice was attempting to make an approximation of the amount due and owing for gasoline in light of the credit limitations, he may not have made the precise calculations necessary to determine the total amount due and owing as shown on Newport's records. As a consequence, we shall remand this case to the trial justice in order that he may make a finding and enter a revised judgment based upon the amount due and owing for gasoline delivered by Newport and sold by Viti to its customers as of the time when the consignment arrangement between the parties terminated.

For the reasons stated, the appeal of the plaintiff is sustained in part, the appeal of the defendant is denied and dismissed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.