DECISION
Before the Court is a timely appeal from the October 17, 1995 decision of the Rhode Island State Labor Relations Board ("Board") finding that the Pawtucket Housing Authority ("Authority") had violated R.I.G.L. 28-7-13 by refusing to bargain with the International Brotherhood of Teamsters, Local No. 64 ("Union") with respect to the positions of Executive Secretary and Comptroller. Jurisdiction is pursuant to R.I. G.L. 1956 § 42-35-15.
 I CASE TRAVEL — FACTS
A review of the record reveals the following facts. The Union is a labor organization under the Rhode Island Labor Relations Act, and the Authority is an employer under the Act. (Decision at 18.)
The Authority, which provides rental housing assistance to the community, functions under the direction of the Board of Commissioners and an Executive Director. The Executive Director has the "authority to hire, fire, promote, transfer, demote, and separate all personnel subject to the review and approval by the Board of Commissioners and the regulations outlined." The Commissioners have authority to act on important labor relations decisions facing the Authority.
On April 1, 1989, the Union and the Authority entered into a Collective Bargaining Agreement covering the period from April 1, 1989 to March 31, 1992. During this time period, the Authority had in existence a Personnel Policy.
On February 9, 1990, at a regular meeting of the Board of Commissioners, the Commissioners addressed the requests of two supervisory, non-union employees, namely the Chief of Rental Assistance and the Maintenance Superintendent, for permission to join the bargaining unit represented by the Union. Executive Director John Burgess ("Burgess") expressed strong objections to their inclusion in the bargaining unit, arguing that the senior staff positions would be needed to continue operations in the event of a strike or job action. Burgess argued further that the supervisory nature of the positions might require the individuals to be involved in disciplinary actions against other Union members.
After hearing Burgess' concerns, the Commissioners nevertheless voted to include both positions in the bargaining unit. The Personnel Policy was not changed to reflect this vote: The positions of Chief of Rental Assistance and Maintenance Superintendent remained classified as "administrative, non-union." At the meeting, Commissioner Frank Varone stated that it was his position that anyone should be allowed to join the bargaining unit if they so chose.
Over a year later, at the May 30, 1991 Board of Commissioners meeting, the Commissioners addressed the request of the Executive Secretary, an administrative, non-union position, to be included in the bargaining unit. Commissioner Varone expressed his opinion that the position should remain non-union, and no further action was taken by the Commissioners at that meeting, at which Burgess was not present.
The next day, Burgess wrote to Paul Hanoian, Secretary/Treasurer of the Union, advising him that the February 9, 1990 decision to include two administrative, non-union positions in the unit had "set precedent for all administrative people to do the same if they so chose." On June 3, 1991, Hanoian responded to the letter, suggesting that "a meeting may be in order with the Authority to conclude the aforementioned business at hand." That same day, Burgess sent to all Union members an amendment to the Collective Bargaining Agreement, which added the position of Executive Secretary to the bargaining unit and set forth salary levels.
At the June 13, 1991 meeting of the Board of Commissioners, the Commissioners addressed the request of the Comptroller, an administrative non-union position, to be included in the bargaining unit. At the meeting, the Commissioners unanimously expressed their opinion that management employees, like the Comptroller, should not be in the bargaining unit. Burgess was not present at the meeting.
On June 17, 1991, Burgess sent to all union members a second amendment, this one providing that the non-union position of Comptroller be added to the bargaining unit and setting forth salary levels. At the July 9, 1991 meeting, the Commissioners voted, over Burgess' strong opposition, not to revise the Personnel Policy to include the positions of Executive Secretary and Comptroller as union positions.
As is the practice every January, the Executive Director posted a new seniority list in January of 1992. The Seniority List lists all union employees and their dates of hire in order of seniority. The list included the names of the individuals holding the positions of Executive Secretary and Comptroller, and they were designated as included in the bargaining unit as of May 31, 1991 and June 17, 1991, respectively. At the next meeting, on February 20, 1992, the Commissioners discussed the Seniority List and expressed their opinion that the Executive Secretary and Comptroller were not union members. No further action was taken on this matter at the meeting.
Negotiations between the Union and the Authority for a new Collective Bargaining Agreement began on April 10, 1992 but were delayed until resolution of the issue of including the Executive Secretary and Comptroller in the bargaining unit. As negotiations progressed, it became clear to the Union that the Authority would not agree to the inclusion of the Executive Secretary and the Comptroller in the contract. On November 10, 1992, the Commissioners voted to accept the new contract, which contained a provision wherein the Authority and the Union ". . . agree to allow the issue of the appropriateness of the positions of Comptroller and Executive Secretary as covered positions under the Labor Agreement to be handled through the arbitration process."
On October 17, 1995, the Board entered a Decision and Order finding the Authority had violated R.I.G.L. 28-7-13 by refusing to bargain with the Union with respect to the positions of Executive Secretary and Comptroller. The Authority was ordered to (1) cease and desist from refusing to recognize the inclusion of the two positions within the bargaining unit, and (2) bargain with the Union as to rate of pay and other working conditions applicable to the two positions. The Authority appealed.
 Standard of Review
The review of a decision of the Commission by this Court is controlled by R.I.G.L
§ 42-35-15(g), which provides as follows for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 "(1) In violation of constitutional or statutory provisions;
 "(2) In excess of the statutory authority of the agency;
 "(3) Made upon unlawful procedure;
 "(4) Affected by other error of law;
 "(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 "(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency.Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. CoastalResources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court's role is to examine whether any competent evidence exists in the record to support the agency's findings. Rocha v. Public Util. Comm'n.,694 A.2d 722 (R.I. 1997). The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
 III UNFAIR LABOR PRACTICE
Under Rhode Island law, claims based on unfair labor practices are brought pursuant to the Labor Relations Act (Title 28, Chapter 7). Section 28-7-13 (6) provides in part as follows:
 28-7-13 Unfair labor practices — It shall be unfair labor practice for an employer:
 (6) To refuse to bargain collectively with the representatives of employees, subject to the provisions of §§ 28-7-14 — 28-7-19, except that the refusal to bargain collectively with any representative shall not, unless a certification with respect to the representative is in effect under §§ 28-7-14 — 28-7-19, be an unfair labor practice in any case where any other representative, other than a company union, has made a claim that it represents a majority of the employees in a conflicting bargaining unit.
 IV THE AMENDMENTS
The plaintiff argues that the Labor Board clearly erred in finding that Burgess had authority, both actual and apparent, to amend the Collective Bargaining Agreement. The plaintiff further argues that the Board erred in finding that the actions of the Commissioners ratified the amendments. According to the Board, the terms of the Collective Bargaining Agreement do not require a vote of the Commissioners to effectuate an amendment, and Executive Director Burgess had the authority to make amendments in his day-to-day administration of the contract. The Board argues additionally that the Commissioners ratified the amendments because they were aware of them but did not vote to rescind them.
"Authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Restatement (Second) Agency § 26 (1957). Actual authority can be both express, from the principal's specific words to an agent, or it can be implied, from words or conduct the principal has reason to know would indicate to the agent that he has authority to act.Id. at cmt. c. When authority is granted in a contract, the rules for the interpretation of contracts apply to the interpretation of authority. Id. § 32.
According to plaintiff, neither the Collective Bargaining Agreement nor the Personnel Policy granted actual authority to Burgess to amend either document. Any amendments to the documents, plaintiff argues, are precluded without the approval of the Commissioners. The Board concedes that Executive Director Burgess may not have had the authority to amend the Personnel Policy, but argues that he did have the authority to amend the Collective Bargaining Agreement.
The Personnel Policy expressly disallows any amendment without the approval of "at least three members of the Board of Commissioners and the recognized representatives of the employees." No such limitation exists within the Collective Bargaining Agreement. Article VI of the Bargaining Agreement provides the following:
 "No agreement, understanding, alteration or variation of the terms or provisions of this Agreement herein contained shall bind the parties hereto, unless made and executed in writing by the parties hereto" (emphasis added).
The language is clear. Binding agreements may be made if executed in writing by the parties to the agreement. Mr. Burgess, as signator to the agreement, is a party to it. Furthermore, the Agreement defines the Authority to include "the Board of Commissioners, the Executive Director, and any other authorizedrepresentative" (emphasis added). The plain meaning of this language indicates that Burgess, acting as Executive Director, was an authorized representative of the Authority.
The actions of the Commissioners, "reasonably interpreted," could have prompted Burgess to believe that he was authorized to include the positions in the union without seeking a vote to amend the Personnel Policy. In February of 1990, the Commissioners voted to include two non-union administrative positions in the bargaining unit. The Commissioners did not vote to amend the Personnel Policy accordingly. Consequently, the positions are recognized as union without the corresponding classification in the Personnel Policy.
The evidence in the record supports the Board's finding that Burgess had actual authority to amend the Agreement, including amendments which would add administrative non-union positions to the bargaining unit. The Authority had reason to know that Burgess would believe he was so authorized and cannot now claim that it did not intend that he have this authority. "Whenever the principal manifests to the agent that the agent is to act on his account, authority exists although the principal is not in fact willing that he should do so." Restatement (Second) Agency § 26 at cmt. a.
In addition to finding that Burgess had the authority to amend the Collective Bargaining Agreement, the Board concluded that the Authority, through its action and in-action, ratified the amendments. The plaintiff argues that the Commissioners could not have ratified the amendments because they did not have the requisite knowledge of all material facts, and they did not benefit from the amendments.
A principal who has full knowledge of all material facts and consents to the acts of an unauthorized agent may be bound by the acts under the principle of ratification. See Beckwith v. RhodeIsland School of Design, 404 A.2d 480, 485 (R.I. 1979). The principal also must have benefited from the agent's acts. Id. The benefit is one "to which [the principal] would not be entitled unless the transaction were ratified and to which [the principal] makes no claim independently of the act of the purported agent. Restatement (Second) Agency § 98 at cmt. a. Failure to repudiate an unauthorized transaction can give rise to the inference that the principal affirmed the act. See Buonanno v.DiStefano, 430 A.2d 765, 768 (R.I. 1981). In the instant matter, the Board found that the Authority knew of both amendments shortly after each was sent to Union members in the summer of 1991. The plaintiff argues that the Commissioners were not aware of the amendments until the Seniority List was circulated in January of 1992, and that they immediately repudiated the amendments by expressing their disapproval at the subsequent meeting.
The record supports with substantial evidence the Board's finding that the Commissioners ratified the amendments. Even assuming, as the plaintiff suggests, the Commissioners did not have full knowledge of the amendments until January of 1992, the Commissioners did not thereafter repudiate Burgess' actions. At the meeting immediately following the posting of the Seniority List, the Commissioners did not vote to rescind the amendments. They expressed their opinion that both positions should remain non-union, but they took no action to insure this result.
Even if, as the Board so found, the Commissioners had full knowledge of the amendments in the summer of 1991, the Commissioners did not repudiate Burgess' actions. At the July 9, 1991 meeting, they voted not to amend the Personnel Policy, which is not the same as voting to rescind the amendments to the Collective, Bargaining Agreement. The Personnel Policy "recognizes the existence of specific legally binding personnel labor contracts and it is not intended to add or to diminish the terms, conditions, or provisions contained therein." The Personnel Policy is not incorporated into the Collective Bargaining Agreement as a contractually binding agreement.
Furthermore, the Authority benefited from the Amendments. When they became members of the bargaining unit, the Executive Secretary and the Comptroller agreed to be bound by the Collective Bargaining Agreement. The Collective Bargaining Agreement conferred contractual benefits it would not have otherwise had upon the Authority as a result of including the two positions in the bargaining unit. For example, pursuant to the Collective Bargaining Agreement the Authority had the right to file a grievance against the union for the acts of the Executive Secretary. By accepting this benefit, the Authority ratified the amendments. See Newport Oil Corp. v. Vito Bros., Inc.,454 A.2d 706, 708 (R.I. 1983).
 CONCLUSION
After a review of the entire record, the Court finds that the decision of the Board is supported by reliable, probative and substantial evidence in the record. Substantial rights of the appellant have not been prejudiced. Accordingly, the October 17, 1995 decision of the Labor Relations Board is hereby affirmed.