GENERAL MOTORS CORPORATION *vs.* ELLEN BLACKBURN
& another.[1]

Norfolk. March 10, 1988. — October 20, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Motor Vehicle*, Defect, Warranty. *Notice*, Timeliness. *Arbitration*, Award. *Statute*, Construction.

On an automobile manufacturer's appeal to the Superior Court of an award in favor of the purchasers of a new automobile in an arbitration proceeding pursuant to G. L. c. 90, § 7N½, the so-called "Lemon Law," entry of summary judgment in favor of the purchasers on both the manufacturer's complaint and on the purchasers' own counterclaim under G. L. c. 93A was error, where the purchasers failed to establish that the manufacturer received notice of its final repair opportunity which, under G. L. c. 90, § 7N½ (4), was a prerequisite to the manufacturer's liability, and where the purchasers' counterclaim, by its express terms, was based on the alleged failure of the manufacturer to comply with § 7N½, and no such failure was established. [323-325] LIACOS, J., with whom HENNESSEY, C.J., and ABRAMS, J., joined, dissenting.

CIVIL ACTION commenced in the Superior Court Department on November 6, 1986.

Motions for summary judgment were heard by *Ernest S. Hayeck*, J., sitting under statutory authority.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Daniel L. Goldberg* (*Christopher Poreda* with him) for the plaintiff.

*Dennis R. Brown* for the defendants.

*Paula W. Gold*, Secretary of Consumer Affairs and Business Regulation, & *Paul W. Gromer*, Special Assistant Attorney General, for Secretary of Consumer Affairs and Business Regulation, amicus curiae, submitted a brief.

---

[1] Glenn Blackburn (husband).

O'CONNOR, J. The Blackburns prevailed in an arbitration pursuant to G. L. c. 90, § 7N½ (1986 ed.) (Lemon Law). General Motors Corporation (GM) appealed the arbitration award to the Superior Court in Norfolk County. G. L. c. 90, § 7N½ (6). The Blackburns filed a counterclaim in two counts, one count under G. L. c. 90, § 7N½, and one count under G. L. c. 93A (1986 ed.). Both parties moved for summary judgment. Mass. R. Civ. P. 56, 365 Mass. 824 (1974).[2] Summary judgment was entered in favor of the Blackburns on GM's complaint and on the Blackburns' c. 93A counterclaim. GM appealed and we transferred the case on our own initiative. We reverse both judgments.

The facts shown in the record are these. On April 17, 1986, the Blackburns purchased a new 1985 Chevrolet Corvette automobile from Clay Chevrolet (Clay), a Chevrolet dealer. On five occasions from April 22 to June 2, 1986, the Blackburns brought the vehicle to Clay for repairs. The fifth time, on June 2, the Blackburns left with Clay a letter addressed to GM's Chevrolet Motor Division, demanding that GM repair the defects within seven business days, or replace the vehicle, or refund an amount of money calculated in accordance with the Lemon Law. A representative of Clay agreed to forward the letter to GM. GM received the letter on June 6, 1986.

When the Blackburns reclaimed their vehicle from Clay on June 5, 1986, the defects complained of still existed. On June 6, 1986, GM sent a letter to the Blackburns requesting the Blackburns to communicate with GM "so that we may set a mutually agreeable date, time and place to review your complaint." The Blackburns did not respond to this letter. On July 28, 1986, the vehicle was towed by Clay to the dealership.

On August 1, 1986, the Blackburns filed a request for arbitration with the Executive Office of Consumer Affairs and Business Regulation. G. L. c. 90, § 7N½ (6). The arbitration was held on September 26, 1986, and the arbitrator ruled in favor of the Blackburns. Specifically, the arbitrator found that

---

[2] Both parties filed affidavits in support of their motions. The Blackburns' affidavit incorporated the arbitrator's decision.

the Blackburns' vehicle had a substantial defect that caused "the car to veer to the right, skid on wet roads and the tires to become defective." The arbitrator also concluded that the letter delivered to Clay on June 2 was notice to GM of the defect, and that therefore GM's final repair opportunity, provided for in G. L. c. 90, § 7N½ (4), commenced on June 2. The arbitrator directed GM either to accept return of the vehicle and to replace it or to refund the sum of $27,628.69 to the Blackburns. GM neither replaced the automobile nor refunded the specified sum, but filed a complaint in Superior Court in Norfolk County appealing the arbitrator's decision.

General Laws c. 90, § 7N½, provides consumers with a procedure for dealing with a seriously defective new motor vehicle. The statute requires the manufacturer of the vehicle, its agent, or its authorized dealer to repair the nonconforming vehicle. G. L. c. 90, § 7N½ (2). A vehicle is nonconforming if it has "any specific or generic defect or malfunction, or any concurrent combination of such defects or malfunctions that substantially impairs the use, market value or safety of a motor vehicle." G. L. c. 90, § 7N½ (1). If the manufacturer, its agent, or authorized dealer fails to conform the vehicle after a reasonable number of repair attempts, the manufacturer is required to accept return of the vehicle and to replace the vehicle or to refund the full contract price subject to adjustments. G. L. c. 90, § 7N½ (3). Under the statute, a reasonable number of repair attempts have been undertaken "if (a) the same nonconformity has been subject to repair three or more times . . . but such nonconformity continues to exist or . . . has recurred . . . or (b) the vehicle is out of service by reason of repair of any nonconformity for a cumulative total of fifteen or more business days." G. L. c. 90, § 7N½ (4). The manufacturer is provided with one additional opportunity "not to exceed seven business days" to cure any nonconformity. G. L. c. 90, § 7N½ (4). The final opportunity to repair commences on the day the manufacturer first knows, or should have known, that the same nonconformity has been subject to repair three or more times but continues to exist, or the vehicle has been out of service for repair for a total of fifteen days ([a] or [b] above). G. L. c. 90, § 7N½ (4).

Consumers are not required to give notice directly to the manufacturer of the existence of any nonconformity before seeking arbitration. G. L. c. 90, § 7N½ (5). If a consumer files for arbitration within the applicable time limit, the manufacturer is required to submit thereto. G. L. c. 90, § 7N½ (6). Arbitration is performed by a professional arbitrator or arbitration firm appointed by the Secretary of Consumer Affairs. G. L. c. 90, § 7N½ (6). In any subsequent action, the findings of fact issued by the arbitrator are taken as prima facie evidence. G. L. c. 90, § 7N½ (6). The statute also provides a procedure for an appeal to the Superior Court of the arbitrator's decision, G. L. c. 90, § 7N½ (6), and a sanction if a manufacturer fails to comply with the arbitrator's decision. G. L. c. 90, § 7N½ (8).

The Blackburns' motions for summary judgment required them to establish that there are no genuine issues of material fact and that they are entitled to judgment in their favor. We conclude that they failed in this regard because nothing in the arbitrator's decision or in any material put before the judge establishes that GM was given the final repair opportunity which, under § 7N½ (4), is a prerequisite to a manufacturer's liability. In view of our conclusion, it is unnecessary for us to address other arguments presented by GM.

The arbitrator concluded that the Blackburns' letter delivered to Clay on June 2, 1986, was notice to GM, and that, therefore, GM's final repair opportunity began on that date. If, indeed, notice to Clay was notice to GM, GM's repair opportunity would have commenced not on June 2, but at an earlier time when Clay first became aware that three repair attempts had been unsuccessful. It appears clear that, if notice to Clay was necessarily notice to GM as well, GM failed to make use of the seven business day opportunity for repairs provided by § 7N½ (4). The critical question, then, is not whether GM's final repair opportunity commenced on June 2, when the Blackburns' letter addressed to GM was delivered to Clay, or instead, commenced on June 6 when GM received the letter. The critical question is whether GM's final repair opportunity

commenced as soon as Clay was on notice of three unsuccessful repair attempts, or on June 6.

The arbitrator's determination that GM's final repair opportunity commenced on June 2 was not a finding, but was a ruling of law. The arbitrator made no findings that GM had expressly or impliedly authorized Clay to receive notice on GM's behalf, and there were no other materials before the judge establishing such agency. GM submitted two relevant affidavits in connection with the summary judgment motions, but GM's affidavits tended to show an absence of agency. In one, Robert Clay stated that he was the owner of Clay Chevrolet, that the Blackburns purchased the automobile from his dealership, and that Clay Chevrolet was an independent dealer which was neither owned nor controlled by GM. In the other, Wayne M. Martin, a customer assistance area service manager for GM, stated that he received the Blackburns' letter on June 6, 1986, and sent a reply, to which the Blackburns did not respond. The affidavit also stated: "June 6, 1986 was the first time GM knew or should have known it had one final opportunity to repair, because it is not a policy or practice of any dealership . . . to advise GM of problems with a vehicle . . . . GM was not given a final opportunity to repair as required by law."

We reject any argument that § 7N½ (5) expressly or by implication makes the dealer the manufacturer's agent for the purpose of receiving the notice contemplated by § 7N½ (4). Section 7N½ (5) provides that "[n]o consumer shall be required by any manufacturer, its agent or its authorized dealer to give notice directly to a manufacturer of the existence of any nonconformity before resorting to state-certified, new car arbitration." It is worth noting that § 7N½ (5), as well as §§ 7N½ (2), (3), and (4), refers to manufacturers, agents, and authorized dealers in the alternative, thus strongly suggesting that authorized dealers are not necessarily agents. We should not readily assume statutory redundancy.

The argument based on § 7N½ (5) seems to be that the commencement of arbitration would be inappropriate unless the manufacturer's seven day repair opportunity has already

expired, so, if arbitration may be commenced without the consumer's having given the manufacturer direct notice of the uncured nonconformity, it must be that notice to the dealer is deemed to be notice to the manufacturer as well. The argument is not persuasive. Even if we were to assume a legislative intent that arbitration proceedings should not be commenced before the manufacturer has failed to meet its repair obligation, that obligation may be triggered by notice other than direct notice from the consumer. The manufacturer's final repair opportunity, and therefore duty, depends only on the manufacturer's having received notice from *some* source, from the dealer for example, of the uncured nonconformity. A holding by this court that notice to the dealer is notice to the manufacturer simply because of the manufacturer-dealer relationship would frustrate the clear intent of the Legislature to give manufacturers a genuine repair opportunity before liability attaches.

We conclude that the Blackburns failed to establish for summary judgment purposes that GM received notice of its final repair opportunity before June 6, 1986, when GM received the Blackburns' letter. We also conclude that the Blackburns have not established that GM had a realistic seven-business day repair opportunity commencing on June 6. The Blackburns do not contend otherwise. Therefore, summary judgment dismissing GM's complaint was erroneous and must be reversed. Also, since the Blackburns' counterclaim, by its express terms, is based on the alleged failure of GM to comply with § 7N½, and no such failure has been established, the summary judgment for the Blackburns on count 2 of their counterclaim also must be reversed.

*So ordered.*

LIACOS, J. (dissenting, with whom Hennessey, C.J., and Abrams, J., join). I disagree with the court's restrictive reading of the provisions of G. L. c. 90, § 7N½ (4) & (5) (1986 ed.). General Laws c. 90, § 7N½ (4), provides: "[T]he manufacturer shall be afforded one additional opportunity, not to exceed

seven business days, to cure any nonconformity . . . . Such additional opportunity to cure shall commence on the day *the manufacturer first knows or should have known* [that the vehicle had been the subject of three or more repair attempts for the recurring nonconformity or that the vehicle was out of service for repair of the nonconformity for a cumulative total of fifteen or more business days]'' (emphasis added). In his affidavit, Wayne M. Martin, customer assistance service manager for General Motors (GM), sets forth facts indicating that GM did not have actual notice until June 6, 1986. As for constructive notice, the affidavit states that June 6 was the first time GM should have known about the nonconformity ''because it is not a policy or practice of any dealership, including Clay Chevrolet, to advise GM of problems with a vehicle.'' The affidavit concludes: ''GM was not given a final opportunity to repair as required by law.'' The parties agree that the Blackburns left their letter to GM at Clay Chevrolet on June 2, 1986. The parties also agree that GM received that letter on June 6, 1986. The dispute here is one of law, not of fact: Was the delivery of the letter on June 2 actual or constructive notice to GM?

General Laws c. 90, § 7N½ (5), states: ''No consumer shall be required by any manufacturer, its agent or its authorized dealer to give notice directly to a manufacturer of the existence of any nonconformity before resorting to state-certified, new car arbitration.'' By specifically exempting a consumer from giving notice directly to a manufacturer of a nonconformity, the Legislature necessarily made the dealer a party to receive notice that the statutory requirements indicating a nonconformity had been met. For this limited purpose, the Legislature made the dealer an agent of the manufacturer. Consequently, we should apply the well established principle that notice to an agent is notice to the principal. Restatement (Second) of Agency § 9(3) (1958). 2 Mecham, Agency § 1803 (2d ed. 1914). *Jamrog* v. *H.L. Handy Co.,* 284 Mass. 195, 199 (1933). By operation of law, GM had constructive notice of its final opportunity to repair, at least, by June 2. General Laws c. 90, § 7N½ (4), states that the ''additional opportunity to cure *shall commence on the day* the manufacturer knows or should have

known [of the defect]." Thus, GM's final opportunity to repair started on June 2. When the vehicle was released to the Blackburns on June 5, without the necessary repair having been made, GM had failed in its final opportunity to repair.[1] In my view, summary judgment was entered properly on this ground.

It is unfortunate, I think, that the court takes a restrictive approach on this issue. General laws c. 90, § 7N½, the Lemon Law, is a remedial statute and, as such, should be construed liberally. *Batchelder* v. *Allied Stores Corp.*, 393 Mass. 819, 822 (1985). A primary purpose of this remedial statute is to give relief to the consumer from the well known effort of manufacturers of automobiles to insulate themselves from responsibility for such of their products as are defectively designed or manufactured. Automobile manufacturers have accomplished their purpose of evading responsibility, in part, by setting up separate corporate entities to frustrate common law agency principles. It is well known that no dealer of new automobiles can sell and service automobiles except as franchised and supervised by the manufacturer. It is also well known that automobile purchasers have faced an aggravating "run around" in trying to get their automobiles repaired when they are sold a "lemon." The Legislature, obviously aware of these problems, sought to give expeditious relief to the consumer by enacting the Lemon Law. Sadly, the court, by the position it takes today, resurrects the power of a manufacturer to continue its tactics of ducking its responsibility.

Perhaps the only hope consumers have in this regard is that an enlightened Legislature will rectify the court's mistake. I dissent.

---

[1] In its brief, GM does not argue that its final opportunity to repair did not terminate on June 5 but was extended for seven days after June 2. Even if GM had, the statute requires repairing, not writing or talking.