Cowin, J.
Plaintiff William S. Cummings (“Cummings”) filed this action for breach of contract, breach of implied and express warranty and violation of G.L.c. 93A against defendants Auto Engineering L.P. (“Auto Engineering”) and Mercedes-Benz of North America, Inc. (“Mercedes”) on October 7, 1994. Cummings also seeks to rescind the lease on his Mercedes automobile and revoke his acceptance of the vehicle. This case comes before the Court on consideration of Mercedes’ motion for summary judgment under Mass.R.Civ.P. 56. For the following reasons, Mercedes’ motion for summary judgment is ALLOWED in part and DENIED in part.
BACKGROUND
The following undisputed facts are derived from the parties’ submissions. In December of 1992, Cummings received a telephone call from David Edwards of Auto Engineering, a Mercedes-Benz dealership, in which Edwards asked Cummings if he were interested in trading in his leased Mercedes-Benz for a 1993 model of the same automobile. Cummings told Edwards that he was dissatisfied with the traction control of his present Mercedes, and that he would only consider leasing another Mercedes if the traction control had been substantially improved. Edwards then told Cummings that Mercedes had developed a new form of traction control, the Acceleration Slip Control (“ASC”) system, that would alleviate the difficulties Cummings had experienced. Cummings telephoned two other Mercedes dealerships and confirmed the representations made by Edwards about the ASC system.
Auto Engineering was an independently owned and operated automobile dealership. Between January of 1992 and April of 1993, Auto Engineering was an authorized dealer of Mercedes automobiles, under the provisions of the Mercedes-Benz Passenger Car Dealer Agreement (“the Dealer Agreement”). According to the Dealer Agreement, Auto Engineering purchased automobiles from Mercedes and then sold or leased them to customers. The Agreement specifically prohibited Auto Engineering from making any statement that would amend or alter the provisions of the Mercedes warranty.[2]
Cummings telephoned two other Mercedes dealerships to verify the details of the ASC System; the information Edwards had provided was confirmed. As a result, on December 31, 1992, Cummings signed a thirty-six month agreement with Auto Engineering to lease the new model Mercedes. The words “Mercedes-Benz” and the Mercedes trademark appear on the lease form.
Cummings was almost immediately dissatisfied with the performance of his new Mercedes on snow-covered roads. He contacted one of the service advisors at Auto Engineering; this person advised him to either purchase snow tires to improve the car’s performance and traction or fill the trunk with sandbags for ballast. Cummings was later told by Bill Currie, Auto Engineering’s Service Manager, that neither Mercedes nor Auto Engineering would pay for the purchase or installation of snow tires.[3]
DISCUSSION
This Court allows summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears *126 the burden of affirmatively demonstrating both elements. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion.” Pederson, supra at 17. The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
At the crux; of Cummings’ theory of liability is the assertion that Auto Engineering acted as an agent of Mercedes-Benz when it warranted the performance and traction of the car which Cummings leased. Cummings’ claims against Mercedes-Benz cannot survive summary judgment because he has failed to provide a sufficient factual basis that Auto Engineering was Mercedes’ agent.
Cummings first attempts to show that Mercedes had granted Auto Engineering express authority as its agent. Express authority can be created by “written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal’s account.” Restatement (Second) Agency §26 (1958). As a matter of law, an express agency did not exist here. The Mercedes-Benz Passenger Car Dealer Agreement, the standard contract used between Mercedes and its authorized dealers which governed the relationship of Mercedes and Auto Engineering, expressly states that “(d)ealer is not the agent of . . . Mercedes-Benz of North America for any purpose whatsoever.” Plaintiff submits no evidence to rebut this express denial of an agency relationship.
Cummings contends however that, at the time the lease was negotiated, he had reason to believe that Auto Engineering was the agent of Mercedes, and therefore that Auto Engineering had apparent authority as an agent to bind Mercedes in contract. The Supreme Judicial Court has stated that “apparent authority”
results from conduct by the principal which causes a third person reasonably to believe that a particular person . . . has authority to enter into negotiations or to make representations as his agent (citations omitted) ... If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying the agency is authorized. Hudson v. Massachusetts Property Ins. Underwriting Association, 386 Mass. 450 (1982), quoting W. A. Seavey, Agency §8D, at 13 and §8E, at 14 (1964).
The existence of apparent authority is a question of fact. Kansallis Finance, Ltd. v. Fern, 40 F.3d 476, 480 (1st Cir. 1994).
To support his claim of apparent authority, Cummings provides four primary sets of facts: the appearance of the Mercedes name and trademark at the top of the lease agreement; the control exercised by Mercedes over Auto Engineering’s sales practices under the Dealer Agreement; the fact that Auto Engineering was an exclusive retailer of Mercedes automobiles; and Mercedes’ retention of exclusive control over the warranty offered with the automobile.
The corporate name printed at the top of the Lease Agreement is not that of Mercedes-Benz of North America, but that of the Mercedes-Benz Credit Corporation (“the Credit Corporation”). The Credit Corporation was a party to the lease and several of the terms of the agreement explicitly relate to the assignment of the rights of Auto-Engineering under the lease to the Credit Corporation. The inclusion of the name of the Credit Corporation on the lease agreement, where the Credit Corporation was an intended third-party beneficiary of the contract, does not assist in creating a reasonable belief that Auto Engineering was acting as an agent for Mercedes-Benz of North America. The appearance of the Mercedes-Benz trademark along with the name of the Credit Corporation does not lend support to plaintiffs agency argument either.
Cummings’ second argument relies upon the Dealership Agreement between Auto Engineering and Mercedes. Cummings argues that the provisions of this agreement support his belief that Mercedes exercised such strict control over the practices of Auto Engineering that an agency relationship existed. The agreement contains an express denial of an agency relationship. Furthermore, the agreement specifically denies Auto Engineering the power to modify any of Mercedes’ warranties or to create any express or implied obligations between Mercedes and automobile lessors or purchasers. A reasonable person reading the Dealer Agreement could not conclude that Auto Engineering had authority to act as Mercedes’ agent.
Auto Engineering’s status as an exclusive retailer of Mercedes cars is not a fact from which one could reasonably conclude that Auto Engineering was an agent of Mercedes. Exclusive retail agreements are common in the automobile industry; a reasonable person could not infer the existence of apparent authority from the existence of such an agreement.
Furthermore, the control held by Mercedes over the warranty issued to Cummings is irrelevant to the possible existence of an agency relationship. Auto Engineering was not even a party to the limited warranty supplied by Mercedes with 1993 registered passenger cars: the warranty binds only Mercedes and individual car owners or lessees.[4] Auto Engineering is *127 not even a third-party beneficiary of the warranty: it only benefits in the slightest degree from the warranty provision obliging car owners or lessees to undertake repairs or replacements at authorized Mercedes dealerships. Since Mercedes, not Auto Engineering, assumed the contractual obligations of the warranty agreement, it is natural that Mercedes should retain control over the manner in which the agreement was performed. This assumption of control is not a reasonable basis for the belief that Auto Engineering was Mercedes’ agent and could unilaterally modify the terms of the warranty between Mercedes and Cummings.
Cummings telephoned three different Mercedes dealers, including Auto Engineering, to inquire about the traction control offered by the ASC system; all three gave him a similar account of the function and limitations of ASC.[5] While the ASC .system was an option installed in Mercedes automobiles at the customer’s request, the system was developed and manufactured by Mercedes-Benz of North America, not by the dealers. Mercedes dealers like Auto Engineering acted as conduits of information between Mercedes-Benz and individual purchasers when they described the elements of the ASC system to their customers. A reasonable customer could not conclude from the uniformity of information provided by the dealers that any dealership had the power to modify the representations or warranties Mercedes had issued concerning ASC. Instead, the fact that the dealers communicated a “party line” of information to Cummings supports Mercedes’ contention that Auto Engineering had no authority at all to modify any of Mercedes’ warranties or contracts.
Cummings does not argue directly that ordinary consumers, according to common knowledge, reasonably believe that car dealers act as agents of the manufacturers. The Court notes, however, that, while the Supreme Judicial Court has never ruled on this issue, in General Motors Corp. v. Blackburn, 403 Mass. 320 (1988), the Court found that the “Lemon Law,” G.L.c. 90, §7N1/2, “strongly suggest[ed] that authorized dealers are not necessarily agents.” Commentators have concluded that:
normally dealers in new automobiles, although commonly spoken of as agents, are purchasers from the manufacturers, their only attribute as agent being authority to extend to the purchasers from them the limited warranty of the manufacturers.
Restatement (Second) Agency §14 J comment (e)(1964), quoted in Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976).
Since, as a matter of law, Auto Engineering was not an agent of Mercedes-Benz of North America, Cummings’ breach of contract claim against Mercedes cannot survive summary judgment.
Cummings’ express warranty claim merits a trial under the theory that Mercedes-Benz breached express warranties granted to him under Mercedes’ Limited Warranty for 1993 Registration Year Passenger Cars (the “limited warranty”) when it failed to completely repair the automobile’s traction control after he first made a complaint. The limited warranty, made expressly between Mercedes-Benz of North America and “all original and subsequent owners of Mercedes automobiles,” states that “any authorized Mercedes-Benz Dealer will make any repairs or replacements necessary, to correct defects in material or workmanship.” While Cummings was the lessee and not the owner of his automobile, the Lease Agreement between him, Auto Engineering and the Mercedes-Benz Credit Corporation states that “to the extent they are assignable, [Auto Engineering] agree[s] to assign [Cummings] all your rights and remedies under the manufacturer’s standard written warranties.” This provision of the lease, in plain and simple language, supports Cummings’ claim that he was assigned the benefit of the limited warranty by Auto Engineering. Furthermore, Cummings has offered sufficient facts in his affidavit that the traction problems with the Mercedes constituted a defect in workmanship or material.[6] Consequently, Cummings has presented sufficient facts to avert summary judgment on his express warranty claim. Under Jacobs v. Yamaha Motor Corp, U.S.A., 420 Mass. 323, 328-30 (1995), Cummings may proceed with his breach of warranty claim despite the fact he did not suffer personal injury or property damage. He need show only that he has suffered “damage” when Mercedes failed to ensure that an authorized dealer fully repaired the defects in his vehicle. Id., at 330.
Cummings may also proceed against Mercedes under an implied warranty theory. Since Auto Engineering had no authority to act as Mercedes’ agent, the disclaimers of the standard consumer warranties included in the lease did not have the effect of modifying or reducing Mercedes’ legal obligations to remote customers.[7] In Mason v. General Motors Corp., 397 Mass. 183, 189 (1986), the Supreme Judicial Court ruled that the Legislature, in enacting St. 1973 c. 750 (codified as G.L.c. 106, §2-318), had extended the implied warranty of merchantability and the implied warranty of fitness for a particular purpose to consumer lease transactions. As a lessor of a consumer good, Cummings is entitled to the protection of the implied warranties, and he may therefore bring suit for breach of the implied warranties of merchantability and fitness for a particular purpose.
In regard to the remedies of rescission of the lease or revocation of acceptance of the automobile, none of the facts provided by Cummings show that he had a direct contractual relationship with Mercedes when he leased the vehicle. Our Supreme Judicial Court has never decided whether a consumer may revoke acceptance against a remote seller. See Jacobs v. Yamaha Motor Corp., U.S.A., 420 Mass. 323, 327, n.2. Although the “majority view in this country under §2-608 of the *128 Uniform Commercial Code (UCC) is that a buyer may not revoke acceptance against a remote seller . . . , [a] reasonable argument can be made that at least a consumer whose seller is insolvent should be entitled to a revocation remedy against the manufacturer of goods.” Id. Further, the Court notes that the revision of Art. 2 of the UCC presently being developed will “give attention" to a buyer’s right to revoke acceptance “by giving notice to the remote seller and will state the remote seller’s obligations in such a case.” Given the fact that the seller (lessor) in the instant case is insolvent, and the Supreme Judicial Court’s comments quoted above, this Court concludes that summaiy judgment should be denied as to the rescission and revocation claims.
Cummings’ final claim is that Mercedes engaged in unfair and deceptive acts and practices in violation of G.L.c. 93A. Whether conduct falls within the scope of G.L.c. 93A depends upon the individual circumstances of the case. U.S.M. Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108 (1989). Not every breach of contract or illegal act rises to the level of a G.L.c. 93A violation. Walsh v. Chestnut Hill Bank and Trust Co., 414 Mass. 283, 288 (1993); Mechanics Nat’l Bank of Worcester v. Killeen, 377 Mass. 100 (1979). While the defendant has shown that Cummings does not have a reasonable expectation of proving at trial his breach of contract claim, the defendant has not prevailed at summary judgment against Cummings’ other claims. The facts that Cummings has provided to support his claims show that triable issues of fact exist concerning his c. 93A claim. Consequently, the defendant cannot prevail at summaiy judgment against Cummings’ claim under c. 93A.
ORDER
For the following reasons, defendant Mercedes-Benz of North America’s motion for summary judgment is DENIED as to all Counts other than Count I (breach of contract). The motion for summaiy judgment is ALLOWED as to Count I only.

The Dealer Agreement at paragraph 13 §B states in pertinent part:
Dealer shall not in its sales of such new MB Passenger Cars make any statement or utilize any provision the effect of which is to alter or amend MBNA’s warranty or create any different or additional warranty obligations of MBNA, whether express or implied . . .

Auto Engineering is now insolvent.

The warranty states in pertinent part:
Mercedes-Benz of North America, Inc. (MBNA) warrants to the original and each subsequent owner of a new Mercedes-Benz passenger car that any authorized Mercedes-Benz dealer will make any repairs or replacements necessary, to correct defects in material or workmanship.

Cummings does not contend that the three statements all originated with Mercedes, or that they were made falsely, constituting misrepresentation.

In his affidavit, Cummings states that he had to abandon the car in light snow because of its poor traction (Affidavit of William S. Cummings at paragraph 6). He further states that the car failed a basic road test of its traction ability (id. at paragraphs 8 and 9). He further states that the system did not work even with snow tires unless the trunk were loaded down with concrete blocks (id. at paragraph 12).

Additionally, the Court notes that public policy in Massachusetts strongly countervails against the use of disclaimers of implied warranties in consumer transactions. Disclaimers of the warranties of merchantability and fitness are rendered void and unenforceable in sales transactions by G.L.c. 106, §2-316A; this rule is extended to consumer lease transactions by G.L.c. 106, §2-318. Any provision of a consumer lease that attempts to disclaim or waive the implied consumer warranties is therefore void as a matter of law. In order to show that G.L.c. 106, §2-318 applies to his lease agreement with Auto Engineering, Cummings need simply show that he is a consumer and that his lease of the automobile was a consumer transaction. He has shown support in his affidavit for the proposition that his Mercedes was “bought for use primarily for personal, family or household purposes under G.L.c. 106, §2-100 etseq.