Fishman, J.
In this action, Nicholas Palumbo (“Pal-umbo”) seeks relief under the Massachusetts Used Car Lemon Law, G.L.c. 90, §7N 1/4, from Land Rover North America, Inc. (“Land Rover”). Specifically, Pal-umbo seeks an order requiring Land Rover to repurchase a 1998 Land Rover Discovery (“the vehicle”), which he had purchased used from Land Rover of Peabody (“Dealer”), and which had a leaky sunroof which neither Dealer nor another dealer which attempted repairs, Land Rover of Metro West, were able to successfully repair. This matter is before the Court on Palumbo’s motion for partial summary judgment pursuant to Mass.R.Civ.P. 56, and Land Rover’s cross motion for partial summary judgment.[1] For the reasons set forth below, both motions are DENIED.
BACKGROUND
The undisputed facts as revealed by the summary judgment record are as follows.
On or about July 20,2001, Palumbo purchased the vehicle at issue from Dealer, an authorized dealer of Land Rover. The vehicle had a 12 month/12,000 mile warranty and an odometer reading of over 39,000 miles. The purchase and sales agreement identifies Dealer as the seller. The vehicle is designated a “certified pre-owned vehicle.” A booklet provided at the time of sale describes Land Rover Certified Pre-Owned Vehicles and explains the benefits of buying such vehicles. A Maryland address for Land Rover North America, Inc. is the only address indicated in the brochure. Although the booklet indicates that certified vehicles can only be purchased at “Land Rover Retailers,” it also states that “the Certified program provides you with the same benefits granted owners of new Land Rover vehicles — something you certainly won’t find, from the classifieds or at a typical car dealership.” (Emphasis added.) Moreover, it states that purchaser will be able to drive the vehicle “with the assurance of Land Rover North America and the nationwide network of Land Rover Retailers behind it.” Further, the brochure provides that “Land Rover Certified is the only way to be certain that your new sport-utility has the stamp of approval from Land Rover North America, Inc.”
On July 30, 2001, the vehicle was returned to Dealer for repair of the sunroof leak. It was brought to another dealer in December 2001, and, again on March 22, 2002, for repair of the sunroof.
*118 On April 17, 2002, Palumbo’s counsel demanded that Land Rover repurchase the vehicle. In a letter dated April 25, 2002, Land Rover responded, in pertinent part, as follows: “We strive to provide our owners with the highest quality service and take any negative comments very seriously. However, we must decline your request to repurchase the vehicle. We would suggest that your client schedule an appointment with our Product Support Manager . . . Please contact the Service Manager ... at Land Rover Peabody ... to schedule this appointment. I will continue to follow up with Land Rover Peabody to ensure that the vehicle is repaired.” (Emphasis added.) On or about May 16, 2002, Palumbo brought the vehicle back to Dealer, and the attempted repair again failed. That summer, Palumbo was allegedly injured when a portion of the soaked roof collapsed on him while he was driving.
DISCUSSION
Summary judgment may be granted only where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 420 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This has been described as a heavy burden, with any doubts as to the existence of a genuine issue of fact to be resolved against the movant. 10A Wright, Miller and Kane, Federal Practice and Procedure, §2727 at 124-25 (2d ed. 1983) (discussing identical federal rule); see also Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 203 (1991) (all conflicts resolved and all inferences to be drawn in favor of party opposing the summary judgment motion). The Court is not in a position, at this pretrial stage, to weigh evidence, or to assess the credibility of any witness who would testify to a particular fact. Gordon v. American Tankers Corp., 286 Mass. 349, 353 (1934); see also Kelly v. Rossi, 395 Mass. 659, 663 (1985). Nor should a court grant summary judgment to a party “merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.” Hayden v. First National Bank, 595 F.2d 994, 997 (5th Cir. 1979), quoted with approval in Attorney General v. Bailey, 386 Mass. 367, 370 (1982). Unless the court is convinced that the party bearing the burden of proof has “no reasonable expectation” of satisfying that burden such that there is a complete failure of proof on at least one essential element, summary judgment would be inappropriate. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1997); see also Lyon v. Morphew, 424 Mass. 828, 831 (1994). Applying these principles to the case at bar, this Court concludes, that, despite the fact that both parties agreed that the case was ripe for partial summary judgment, neither the plaintiff nor the defendant have sufficiently shouldered their respective burdens of demonstrating the absence of a triable issue.
Palumbo maintains that there is no genuine issue of material fact with regard to the criteria to establish liability under G.L.c. 90, §7N 1 /4. Land Rover claims that, as a matter of law, the Used Car Lemon Law is inapplicable here because Land Rover is a manufacturer and the law applies strictly to dealers. Accordingly, the defendant argues that not only should Palumbo be denied summary judgment, but Land Rover should be granted summary judgment.
Section 7N 1/4 defines “dealer” as “any person engaged in the business of selling, offering for sale, or negotiating the retail sale of used motor vehicles or selling used motor vehicles as broker or agent for another . . .” This statutory section does not provide a definition for “manufacturers.”[2] The New Car Lemon Law, G.L.c. 90, §7N 1/2, regulates the responsibility of manufacturers when a new motor vehicle does not conform to express or implied warranties, and defines manufacturer as “any person who is engaged in the business of manufacturing motor vehicles . . .”[3] Significantly, §7N 1/2(5) expressly provides that the New Car Lemon Law does not create a cause of action for a consumer against a manufacturer, but the Used Car Lemon Law does not contain a similar provision excluding manufacturer liability under that section.
The initial legal question presented by the case at bar is whether a manufacturer can, under any circumstances, be found to be acting in the capacity of a dealer so as to potentially be liable under Section 7N 1/4. Land Rover contends that by excluding a definition of “manufacturer” in the Used Car Lemon Law, by referring principally to the dealer’s warranty and obligations, and by providing for manufacturer liability in the New Car Lemon Law, the legislature intended that a manufacturer can never be held liable under Section 7N 1/4. In Cummings v. Auto Engineering, 5 Mass. L. Rptr. 125, 1996 WL 1250614 (Mass.Sup.Ct., March 14, 1996), the court granted summary judgment to Mercedes-Benz of North America, Inc. on a breach of contract claim, upon finding that, as a matter of law, the dealership defendant was not an agent of Mercedes-Benz.
The Court notes . . . that while the Supreme Judicial Court has never ruled on this issue, in General Motors Corp. v. Blackburn, 403 Mass. 320, 529 N.E.2d 396 (1988), the Court found that the “Lemon Law,” G.L.c. 90, §7N 1/2, “strongly suggested] that dealers are not necessarily agents.[4] Commentators have concluded that:
normally dealer in new automobiles, although commonly spoken of as agents, are purchasers from the manufacturers, their only attribute as agent being authority to extend from them the limited warranty of the manufacturers.
*119 Restatement (Second) Agency §14J comment (c) (1964), quoted in Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144 (1976).
1996 WL 1250614 *4.
Here, Palumbo has been careful to emphasize that he is not claiming that Land Rover is liable on a theory of agency. Rather, he claims that Land Rover’s role in the sale of the certified pre-owned vehicle makes it subject to the provisions of the Used Car Lemon Law. That statute, §7N 1/4, does not expressly exclude a manufacturer from ever being construed as a dealer or, as previously noted, from being held liable. Pal-umbo correctly points out — and Land Rover does not dispute — that the Lemon Laws were enacted before manufacturers developed the certified pre-owned vehicle programs. As the record before this Court reveals, Land Rover has — at a minimum — blurred the distinction between itself and its dealers under this program. Thus, a genuine issue of material fact exists whether Land Rover, in connection with its certified pre-owned vehicles, is acting in the capacity as a “dealer" under the Used Car Lemon Law. Because there exists this question of fact for the juiy, neither the plaintiff nor the defendant are entitled to summary judgment.
ORDER
Accordingly, for all the foregoing reasons, plaintiffs motion for partial summary judgment is DENIED, and defendant’s motion for partial summary judgment is DENIED.

 Plaintiff also seeks an assessment of damages hearing on his alleged incidental and consequential damages. Plaintiffs original petition further claimed a breach or warranty (Count II) and violations of G.L.c. 93A (Count III). Plaintiff explicitly states that he is not seeking summary judgment on Count II, but is silent on his intentions regarding Count III, and, therefore, no consideration is given to that count. Land Rover seeks summary judgment on Count III based on the notion that a chapter 93A claim must fail when the underlying claim fails. In view of this Court’s denial of Land Rover’s summary judgment motion on the underlying claim, summary judgment must also be denied as to Count III.

 Nile Used Car Lemon Law does reference manufacturers in relation to the dealer’s right to be subrogated to the rights of a consumer against a manufacturer in certain circumstances. G.L.c. 90, §7N 1/4(10).

 Section 7N 1/2(1) does provide a separate and distinct definition of “dealer” than the definition in §7N 1 /4. “Dealer” in the New Car Lemon Law is defined as “any class one seller of motor vehicles as defined in section fifty-eight of chapter one hundred and forty.”

 Nile General Motors Corp. court dealt with the question whether §7N 1/2(5) makes the dealer an agent for the notice requirements of §7N 1/2(5), and expressed no opinion about relationship between manufacturers and dealers under §7N 1/4.