Moriarty, Cornelius J., J.
On October 20, 2009, the plaintiff, Douglas P. Walther (“Mr. Walther”), brought this action against General Motors LLC f/k/a/ General Motors Company (“GM”) and Diamond Chevrolet, Inc. (“Diamond”) (collectively, “the defendants”), to recover damages for the defendants’ alleged failure to repair defects in his new 2009 Chevrolet Cobalt (“the vehicle”). Mr. Walther’s complaint alleges the following counts: breach of contract (Count I); breach of express warranty (Count II); breach of implied warranty of merchantability (Count III); breach of written warranty under Magnuson-Moss Warranty Act (“MMWA”) (Count IV); breach of implied warranty under MMWA (Count V); violation of Massachusetts Consumer Protection Act (Count VI); violation of G.L.c. 90, §7N 1 /2 against GM only (Count VII); and revocation of acceptance (Count VIII). By stipulation of dismissal executed on February 17, 2001, the parties stipulated that Counts III, V, and VI of the complaint would be dismissed. At the July 5, 2011 hearing on GM’s motion for summary judgment, Mr. Walther voluntarily withdrew counts I and VIII. As to the remaining counts, GM’s summary judgment motion is ALLOWED on Counts II and IV, and DENIED on Count VII.
BACKGROUND
The relevant facts are taken from the record and viewed in the light most favorable to Mr. Walther, the non-moving party. See Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
On or about February 28, 2009, Mr. Walther purchased the vehicle from Diamond, an authorized independent Chevrolet dealer in Worcester, Massachusetts. Motors Liquidation Company f/k/a General Motors Corporation (“MLC”) manufactured the vehicle.[2] MLC sold the vehicle with a limited express warranty, which provided that, for a period of thirty-six months or 36,000 miles, whichever occurred first, MLC would “covert ] repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period.” The warranty instructed the owner to take the vehicle to a Chevrolet dealer facility for repairs within the warranty period and allow a reasonable time for the dealer to perform necessary repairs. The warranty also contained an enforcement provision which required that consumers provide the manufacturer with written notice of service difficulties to give the manufacturer the opportunity to make any needed repairs.[3]
After Mr. Walther purchased the vehicle, he brought it back to Diamond for repairs on several occasions. On April 4, 2009, when the vehicle had 2,846 miles on it, Mr. Walther complained to Diamond that the PCV hose was cracked. Diamond inspected the vehicle, ordered an air intake duct, and returned the vehicle to Mr. Walther the same day. On April 14, 2009, at 3,404 miles, Diamond replaced the air intake duct on the vehicle and returned the vehicle to Mr. Walther. The replacement of the air intake duct fixed Mr. Walther’s PCV hose concern.
On June 15, 2009, at 7,819 miles, Mr. Walther returned to Diamond complaining that: 1) the right front door paint has worn away along the top with a one-inch mark; 2) the door-to-body clearance seemed too close; 3) the right front door caught on the body and jiggled up and down and was noisy; 4) the trunk lid was misaligned and has worn a spot at the right hand lower corner; 5) the emblem that said “turbo” was installed over a mark in the paint; and 6) the hinge at the left hand storage bin was broken. GM maintains that Diamond examined the vehicle and addressed the complaints under warranty. It is unclear for what period of time the vehicle was at Diamond for this repair attempt.[4]
On July 15, 2009, at 9,060 miles, Mr. Walther brought the vehicle back to Diamond complaining that the trunk was impacting the rear fascia. GM maintains that Diamond sublet the vehicle, realigned the deck lid, and touched up the paint at no charge to Mr. Walther. The vehicle was returned to Mr. Walther the same day.
On July 27, 2009, at 9,931 miles, Mr. Walther returned to Diamond complaining that the dome light was inoperable, the vehicle had alignment issues on the right hand door, and the trunk and the deck lid/rear fascia was scratched. GM asserts that Diamond ordered a part for the dome light, recalled and sublet vehicle for the door and trunk issues, buffed the scuffs out and realigned the door and trunk, at no cost to Mr. Walther. Diamond returned the vehicle to Mr. Walther the following day.
On August 6, 2009, at 10,579 miles, Mr. Walther returned to Diamond to have the recall performed with the installation of an updated charge air hose retainer and to have the BCM installed under warranty to *650 address the dome light concern. Diamond returned the vehicle the following day.
On August 19, 2010, at 22,270 miles, Mr. Walther brought the vehicle to another Chevrolet dealer, Bertera Chevrolet, Inc. (“Bertera”). Mr. Walther requested that a recall be performed for the loss of power steering assist. He further complained that the service tire message was coming up on the display, the right front tire pressure sensor was not reading, the interior dome lamps were inoperable, and the message on the drivers information center when competitive driving mode was engaged did not come up. GM maintains that, although Bertera could not find any reason for loss of the message information center, it performed all the necessary repairs to address the rest of Mr. Walther’s concerns.
On August 31, 2009, Mr. Walther’s counsel sent a letter to GM, which stated, in relevant part: “(L]et this letter serve as notice that the 2009 Chevrolet Cobalt has been subject to repair at least 4 times and has been out of service for at least 28 days for non-conformities that continue to exist. For the foregoing reasons, Mr. Walther respectfully requests that General Motors Company and/or Diamond Chevrolet repurchase the 2009 Chevrolet Cobalt and pay his/her attorneys fees and costs.” On September 9, 2009, Mr. Walther personally sent a letter to GM, demanding a “final opportunity to repair” pursuant to the “Lemon Law” for “problems with the doors, trunk and engine.” GM maintains that, when it timely contacted Mr. Walther in an attempt to set up an inspection of the vehicle, it received a phone call from Mr. Walther’s father, who informed GM that Mr. Walther’s attorney would be handling the case.
On September 30, 2009, GM’s counsel wrote the following to Mr. Walther’s attorney:
[T]o the extent that you are asserting rights pursuant to the Federal Magnuson-Moss Warraniy Act, our investigation indicates that at no time did you provide either [MLC] or [GM] with a reasonable opportunity to cure any alleged breach of warraniy. To the extent that your client asserts that the vehicle has any unrepaired defect relating to factory material, workmanship or factory preparation covered pursuant to the limited written warraniy provided by [MLC], [GM] reiterates that it remains ready, willing and able to honor the terms of the written limited warranty. Please contact me immediately and we will make arrangements to utilize [GM’s] resources to fully and completely repair any such defect.
Mr. Walther’s counsel never contacted GM to schedule a final repair attempt. Instead, on October 20, 2009, Mr. Walther commenced an action against GM and Diamond.
On December 21, 2011, David H. Hurt (“Mr. Hurt”), GM’s Business Resource Manager and an expert in automotive diagnosis and repair, inspected the vehicle at Salvadore Chevrolet in Gardner, Massachusetts. Mr. Hurt concluded that all vehicle systems were operating properly and found no evidence of a defect in factoiy material or workmanship in the trunk fit to the body or the door fit to the body.
In his deposition, Mr. Walther testified that he does not hold himself as an expert in automobile diagnosis or repair, has never appraised or privately sold a vehicle, and has not had anyone else appraise the vehicle. He concedes that the vehicle has never failed to provide him with transportation, and states that the alleged defects have never caused him to get into an accident. In addition to his own testimony at trial, Mr. Walther expects his expert, Jim Paiva (“Mr. Paiva”), to testify regarding the alleged defects to the vehicle and the alleged damages.[5]
DISCUSSION
A. Breach of Express Warraniy (Count II)
Mr. Walther contends that GM failed to satisfy its warranty obligations because, despite several repair attempts, the defects to the right front door and the trunk remain. Mr. Walther’s claim for breach of express warranty must fail for failure to comply with a condition precedent to the commencement of a breach of warranty action. See Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45 (1991) (“A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract... If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced”). MLC’s limited warranty contained clear and explicit language requiring that the customer provides the manufacturer with a written notice and an opportunity to repair the vehicle prior to commencing an action for breach of warranty. Although Mr. Walther provided GM with a written notice of the defects, he failed to present it with an opportunity to cure the defects in the vehicle before filing this suit. See Rivera v. Chrysler Group LLC, HDCV 2008-00670, slip op. at 6 (Mass.Super. May 7, 2010) (Kinder, J.); Bradbury v. DaimlerChrysler Corp., NOCV 06-02013, slip op. at 5 (Mass.Super. Sept. 18, 2007) (Grabau, J.). Accordingly, Mr. Walther’s breach of express warranty claim fails as a matter of law.[6]
B. Breach of Written Warranty under MMWA (Count IV)
In count IV of his complaint, Mr. Walther asserts a cause of action pursuant to the MMWA, 15 U.S.C. §2301 et seq. Under the MMWA, when a product “contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy the defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part. . .” 15 U.S.C. §2304(a)(4). However, “[n]o action . . . may be brought under [the MMWA] for failure to comply with any obligation under any written or im *651 plied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply.” 15 U.S.C. §2310(e). “[0]nly the warrantor actually making a written affirmation of fact, promise, or undertaking shall be deemed to have created a written warranty, and any rights arising thereunder may be enforced under this section only against such warrantor and no other person.” 15 U.S.C. §2310(1).
As stated previously, MLC’s written warranty required Mr. Walther to provide the manufacturer, as the sole warrantor of the vehicle, with adequate notice and reasonable opportunity to cure the vehicle’s defects. The repairs that Mr. Walther requested from GM’s authorized dealers do not satisfy his obligation to provide GM with an opportunity to repair the defects for the purposes of the MMWA. See 15 U.S.C. §2310(1); see also Wennerberg v. General Motors Corp., SUCV 2007-01165, slip op. at 5 n.8 (Mass.Sup. Sept. 23, 2008) (Cratsley, J.) (“[a dealer’s] attempts to repair the vehicle cannot be imputed against GM, as 15 U.S.C. §2310(e) requires that the specific warrantor obligated under the warranty or service contract—i.e., GM— have an opportunity to repair the defect”).[7] Upon receipt of Mr. Walther’s correspondence informing GM of his concerns, GM promptly communicated to him that it is willing to fully repair any defects. The summary judgment record is clear that Mr. Walther rejected GM’s request for an opportunity to cure the vehicle’s defects, as he failed to present the vehicle to GM for a final repair attempt. Accordingly, summary judgment must enter for GM on this count.
C. Violation of G.L.c. 90, §7N 1/2 against GM (Count VII)
“General Laws c. 90, §7N 1/2, provides consumers with a procedure for dealing with a seriously defective new motor vehicle.” General Motors Corp. v. Blackburn, 403 Mass. 320, 322 (1988). “The statute requires the manufacturer of the vehicle, its agent, or its authorized dealer to repair the nonconforming vehicle.” Id., citing G.L.c. 90, §7N 1/2(2). A vehicle is nonconforming if it has “any specific or generic defect or malfunction, or any concurrent combination of such defects or malfunctions that substantially impairs the use, market value or safety of a motor vehicle.” G.L.c. 90, §7N 1/2(1). Section 7N 1/2(4) provides that “[a] reasonable number of attempts shall be deemed to have been undertaken to conform a motor vehicle to any applicable express or implied warranties if (a) the same nonconformity has been subject to repair three or more times by the manufacturer or its agents or authorized dealers within the term of protection, but such nonconformity continues to exist or such nonconformity has recurred within the term of protection, or (b) the vehicle is out of service by reason of repair of any nonconformity for a cumulative total of fifteen or more business days during the term of protection ...” The term of protection is one year or fifteen thousand miles of use from the date of original delivery of a new motor vehicle, which ever comes first." G.L.c. 90, §7N 1/2(1).
GM asserts that Mr. Walther’s concerns about the right front door and the trunk lid do not substantially impair the value, use or safety of the vehicle. It further contends that Mr. Walther’s remaining concerns, namely his complaints that the PCV hose was cracked and that the dome light was inoperable, cannot serve as basis for liability under the Lemon Law because they were not subject to a reasonable number of repair attempts during the term of protection. In his opposition, Mr. Walther argues that summary judgment is inappropriate on this count because a question of fact exists as to whether the defects to the door and the trunk substantially impair the use, value or safety of the vehicle.
This court agrees with GM that Mr. Walther’s concerns as to the PCV hose and the dome light have been repaired to his satisfaction within a reasonable amount of time. As to whether the alleged defects of the trunk and front door substantially impaired the value, use, or safety of the vehicle, the court finds that summary judgment is inappropriate. Mr. Walther is qualified to offer the jury his opinion as to how the alleged design defects impair his use of the vehicle and whether they affect his safety. See Smith v. Ariens Co., 375 Mass. 620, 625 (1978) (“in cases in which a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required ... It is within the knowledge of a jury whether unshielded metal protrusions on the handle bar of a snowmobile constitute a defect in design which creates an unreasonable risk of harm”). Additionally, Mr. Walther states that he has retained an expert in this matter and expects him to testify at trial as to whether the vehicle was defective and whether such defects, if any, impacted its value and safety. Accordingly, this court denies summary judgment on this count.
ORDER
For the foregoing reasons, it is hereby ORDERED that GM’s motion for summary judgment is ALLOWED on Counts n and IV, and DENIED on Count VII.

MLC was not a party to the transaction between Mr. Walther and Diamond, did not own any portion of Diamond and did not share the dealership’s profits or losses. After filing for bankruptcy on June 1, 2009, MLC sold substantially all of its assets to GM.

Specifically, the warranty provided the following: “(t]o the extent allowed by state law, GM requires that you first provide us with written notification of any service difficulty you have experienced so that we have an opportunity to make any needed repairs before you are eligible for the remedies provided by these laws."

Although Mr. Walther conceded at his deposition that the vehicle was at Diamond for eight business days on this visit, the repair order for June 15, 2009, indicates that the vehicle was at Diamond for twenty-five days.

Mr. Paiva had not examined the vehicle prior to GM’s filing of the summary judgment motion. Mr. Walther asserts that he first learned that GM retained an expert when he was served with the motion. He states that he is in the process of supplementing his answers to GM’s interrogatories with Mr. Paiva’s expected testimony.

GM also argues that its written limited warranty did not fail of its essential purpose because GM had repaired all issues with the vehicle free of charge under the terms of the warranty, the alleged trunk and door issues are not substantial enough for the express warranty to have failed of its essential purpose, and that Mr. Walther has no reasonable expectation of proving damages at trial. In light of the court’s conclusions with regard to Mr. Walther’s failure to comply with the condition precedent to the commencement of this breach of warranty action, the court need not address these contentions.

Although J. Cratsley cites to subsection (e) in support of this statement, this court believes he meant to cite to subsection (f) of the statute.